# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2018 Term

No. 17-0989

**FILED**
**June 04, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* I.M.K.

Certified Questions from the Circuit Court of Lewis County
Honorable Kurt Hall, Judge
Juvenile Abuse Neglect No. 17-JA-17

CERTIFIED QUESTIONS ANSWERED

Submitted: April 24, 2018
Filed: June 4, 2018

James C. Clevenger
Assistant Prosecuting Attorney
for Lewis County, West Virginia
Weston, West Virginia
Attorney for the Petitioner,
West Virginia Department of
Health and Human Resources

Thomas J. Prall
Buckhannon, West Virginia
Attorney for the Respondent Mother,
K.A.L.

G. Phillip Davis
Arthurdale, West Virginia
Attorney for the Respondent Father,
M.F.K.

Alexandria Solomon
Davis, West Virginia
and
Bryan S. Hinkle
Buckhannon, West Virginia
Guardians ad Litem for the Minor Child,
I.M.K.

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "When a child is born alive, the presence of illegal drugs in the child's system at birth constitutes sufficient evidence that the child is an abused and/or neglected child, as those terms are defined by W. Va. Code § 49-1-201 (2015) (Repl. Vol. 2015), to support the filing of an abuse and neglect petition pursuant to W. Va. Code § 49-4-601 (2015) (Repl. Vol. 2015)."  Syllabus point 1, *In Re: A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017).

2.      When an infant child is born alive and becomes the subject of an abuse and neglect petition, but the child dies during the pendency of the abuse and neglect proceedings, the matter may proceed to an adjudicatory hearing, and the presiding circuit court may make findings of fact and conclusions of law as to whether the subject child is an abused and/or neglected child and whether the respondents are abusing and/or neglectful as contemplated by W. Va. Code § 49-4-601(i) (2015) (Repl. Vol. 2015).  The circuit court's findings and conclusions regarding the existence of abuse and/or neglect must, however, be based upon the conditions alleged in the abuse and neglect petition and any amendments thereto.

3.    "Each child in an abuse and neglect case is entitled to effective representation of counsel.  To further that goal, *W. Va. Code*, 49-6-2(a) [1992] [now W. Va. Code § 49-4-601(f)] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings.  Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court.  Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client."  Syllabus point 5, in part, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993).


4.    If an infant child is born alive, becomes the subject of an abuse and neglect petition, and is appointed a guardian ad litem to represent him/her in such case, but the child dies during the pendency of the abuse and neglect proceedings, the guardian ad litem remains involved in the case to advocate for the child until the conclusion of such proceedings.

**Davis, Justice:**

The instant proceeding is before this Court upon two questions certified by the Circuit Court of Lewis County. By order entered September 26, 2017, the Circuit Court of Lewis County certified the following questions for our consideration and decision:

> 1. When an infant child is born alive, but dies during the pendency of an Abuse and Neglect proceeding, prior to adjudication, and said infant child is the only child in the home, may the matter proceed to an adjudicatory hearing, and may the deceased child be found and adjudicated to be an abused or neglected child?

> 2. If an infant child is born alive, but dies during the pendency of an Abuse and Neglect proceeding, and said infant child is the only child in the home, should the *Guardian ad Litem* remain a party to the proceeding to advocate for the rights of the deceased child?

Upon a review of the parties' briefs, the record designated for appellate consideration, and the pertinent authorities, we answer both certified questions in the affirmative.

# I.

## FACTUAL AND PROCEDURAL HISTORY

The facts of the instant proceeding are straightforward and not disputed by the parties. The infant child herein, I.M.K.,[1] was born in July 2017 at St. Joseph's Hospital in

---

[1]In cases involving sensitive facts, we follow our longstanding practice and refer to the child by his/her initials only. *See, e.g.*, *In re: S.H.*, 237 W. Va. 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

1

Buckhannon, West Virginia. At birth, the child had opiates in its system as a result of the mother's admitted prenatal drug use. Immediately following birth, I.M.K. had to be resuscitated due to respiratory distress and was transferred to the Neonatal Intensive Care Unit ("NICU") at Ruby Memorial Hospital in Morgantown, West Virginia. While in the NICU, I.M.K. was treated for severe neurological and respiratory conditions based on a diagnosis of drug-affected birth.

On July 28, 2017, while I.M.K. was still in the NICU, the petitioner herein and petitioner below, the West Virginia Department of Health and Human Resources ("DHHR") filed the underlying petition against the child's mother, the respondent herein and respondent below, K.A.L. ("Mother"), and the child's father, an additional respondent herein and respondent below, M.F.K. ("Father"). In its petition, the DHHR alleged that I.M.K. was a "neglected and abused child" as a result of the parents' illegal drug use, averring as follows:

> Based upon information and belief, the Respondent Mother, [K.A.L.] made admissions to opiate use throughout her pregnancy, as well as testing positive for controlled substances during prenatal care. [K.A.L.], further admitted that her most recent drug use took place three days prior to the birth of the Infant Respondent [I.M.K.], when she "sniffed a Percocet".
>
> Based upon information and belief, the Infant Respondent's urine tested positive for opiates following birth.
>
> Based upon information, and belief, Respondent Father, [M.F.K.] has a history of opioid abuse, as well as abuse of other controlled substances.

2

Based upon information, Respondent [M.F.K.], father of infant respondent [I.M.K.], has failed to protect said infant respondent by failing to take action upon reasonable suspicion of drug use of the Respondent Mother, [K.A.L.], knowing her history of drug use.

By order entered July 28, 2017, the Circuit Court of Lewis County transferred "[t]emporary legal and physical care, custody, and control" of I.M.K. to the DHHR. The circuit court also appointed counsel for each of the parents[2] and appointed a guardian ad litem[3] ("Guardian") for the minor child.

Thereafter, the circuit court held a hearing during which the parents waived their right to have a preliminary hearing within ten days so that the hearing could be concluded quickly to permit them to attend a medical appointment for I.M.K., who was in grave condition. The circuit court then found, by order entered August 15, 2017, that the child "should remain in the temporary legal and physical custody" of the DHHR and ruled that, "[i]n light of the grave condition of infant respondent [I.M.K.], this matter is continued generally, pending the outcome of [the child's] medical treatment."

_____

[2]Current counsel for the Mother did not appear in the proceedings below but was appointed after her initial counsel had to withdraw from the case due to a change in employment.

[3]By order entered April 4, 2018, the circuit court allowed the child's former Guardian ad Litem, Bryan S. Hinkle, who authored the brief in this case, to withdraw due to "an actual conflict of interest" resulting from his change of employment and appointed the child's current Guardian ad Litem, Alexandria Solomon, who appeared before the Court for oral argument.

Following this hearing, I.M.K. died as a result of the aforementioned medical issues; the child was approximately seventeen days old. The court then held a preliminary hearing at which time the child's parents moved to dismiss the subject abuse and neglect case based upon the child's death, which motion the DHHR and Guardian opposed. The Court refused to dismiss the case, ruling in its September 6, 2017, order as follows:

> Significant questions of law and fact remain, and dismissal is not appropriate at this time. The purpose of a preliminary hearing being to make determinations as to imminent danger, and/or to order removal of the child from the home if conditions warrant such removal, the Court finds that a preliminary hearing in this matter would be moot, due to the death of the Infant Respondent.
>
> The Court further finds that should the parties hereto wish to prepare a certified question for submission and review by the West Virginia Supreme Court of Appeals, they should confer and submit that certified question to this Court for review.

The court then set the matter for an adjudicatory hearing.

Before the scheduled adjudicatory hearing, the court decided to certify questions for this Court's resolution. By certification order entered September 26, 2017, the court ruled as follows:

> The allegations in the petition of this matter are related to prenatal use of opiates. No abuse is alleged to have occurred subsequent to the birth of the child. In light of the ruling by the Supreme Court of Appeals of West Virginia in the case of: In

4

Re: A.L.C.M. No. 16-0786 (2017),[4] further guidance from the Supreme Court of Appeals of West Virginia would be relevant in the matter at hand.

This Court submits the following certified questions for review to the honorable Supreme Court of Appeals of West Virginia:

**When an infant child is born alive, but dies during the pendency of an Abuse and Neglect proceeding, prior to adjudication, and said infant child is the only child in the home, may the matter proceed to an adjudicatory hearing, and may the deceased child be found and adjudicated to be an abused or neglected child?**

**If an infant child is born alive, but dies during the pendency of an Abuse and Neglect proceeding, and said infant child is the only child in the home, should the *Guardian ad Litem* remain a party to the proceeding to advocate for the rights of the deceased child?**

(Emphasis in original; footnote added). The circuit court did not provide an answer for either of these questions. Additionally, the court determined that the child's Guardian ad Litem should remain in the case despite the child's death and stayed adjudication pending resolution of the questions certified. This Court then accepted these certified questions for consideration.

---

[4]*See* Section III.A., *infra*, for further treatment of *In Re: A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017).

5

## II.

## STANDARD OF REVIEW

The instant proceeding is before this Court on questions certified by the Circuit Court of Lewis County. We previously have held that we accord a plenary review to the circuit court's rulings in this regard. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996). Mindful of this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The instant proceeding comes to this Court upon two questions certified by the Circuit Court of Lewis County. We will address each certified question in turn.

### A. Adjudication

The first question the circuit court certified to this Court is as follows:

> When an infant child is born alive, but dies during the pendency of an Abuse and Neglect proceeding, prior to adjudication, and said infant child is the only child in the home, may the matter proceed to an adjudicatory hearing, and may the deceased child be found and adjudicated to be an abused or neglected child?

6

Although the circuit court did not provide an answer to this question, it presumably answered it in the affirmative insofar as the court earlier had denied the parents' motion to dismiss the pending abuse and neglect case following the child's death and has stayed their adjudicatory hearing pending this Court's resolution of the case *sub judice*.

Before this Court, the DHHR argues that the abuse and neglect proceeding should continue in spite of the child's death because, otherwise, the goal of abuse and neglect proceedings, *i.e.*, to protect children from abuse and neglect and early identification thereof, would be frustrated. In this regard, the DHHR focuses upon the fact that the allegations of abuse and/or neglect are required, by statute, to be proven as they existed at the time the petition was filed. Here, the DHHR asserts that, at the time the petition was filed, I.M.K. was still alive; thus, the DHHR argues, whether the parents abused and/or neglected the child is not based upon the facts that exist at the time of their adjudication. Finally, the DHHR says that the fact that the case may now be moot due to the child's death does not prohibit this Court from considering it as this fact pattern is capable of repetition and may evade review.

The Guardian agrees with the position advanced by the DHHR and argues that the case should proceed to adjudication following the death of the subject child. Because the circuit court must consider whether the child is abused and/or neglected based upon the circumstances existing at the time the petition was filed at the adjudicatory stage of the

7

proceedings, the child's death after the petition has been filed does not affect the circuit court's adjudication. In this case, the Guardian contends that the petition adequately describes conditions indicative of abuse and/or neglect of I.M.K. sufficient to adjudicate the parents as abusive and/or neglectful. *Citing In Re: A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017).

By contrast, Mother argues that the case should be dismissed because whether I.M.K. was an abused and/or neglected child is now moot due to the child's unfortunate death. Because the purpose of an adjudication is to protect the subject child, and any other children in the home, and because the subject child in this case has died, and there are no other children in the household, Mother states there is no reason to proceed with adjudication in this case. Moreover, Mother contends that, because the child has died, there is no need to develop a case plan for the child. Finally, Mother urges that given that the purpose of an adjudication is to reach disposition, and the purpose of a disposition is the development of a case plan and the attainment of permanency for the child, none of these purposes can be satisfied where, as here, the subject child has died prior to adjudication.

Father also asserts that the subject petition should be dismissed when the child dies prior to adjudication. Given that the purpose of an abuse and neglect proceeding is to ensure the welfare of the subject child, such purpose cannot be achieved when the child has

8

died prior to adjudication. Moreover, Father suggests that the best interests of the child can no longer be determined due to the child's death; thus, there is no polar star to guide the court's resolution of the abuse and neglect proceedings. As such, Father contends that the purpose of the subject abuse and neglect proceeding has been rendered moot. Father also rejects the DHHR's argument that the issue is not moot because it is capable of repetition because each child is a unique individual and, thus, there can never be another I.M.K.

To answer this query, we necessarily must look to the law governing abuse and neglect proceedings. W. Va. Code § 49-4-601(i) (2015) (Repl. Vol. 2015) addresses the procedure to be followed in an adjudicatory hearing and provides as follows:

> Where relevant, the court shall consider the efforts of the department to remedy the alleged circumstances. At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

This process of adjudication enables the presiding tribunal to identify what abuse and/or neglect the subject children have sustained and to implement procedures to help the parents remedy these conditions to prevent future incidences thereof in the future. *See id.* (requiring reviewing court to "make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing [and/or] neglecting"). *See also*

9

W. Va. Code § 49-4-604(a) (2016) (Supp. 2017) (requiring development of child and family case plans following adjudication); W. Va. Code § 49-4-610(2) (2015) (Repl. Vol. 2015) (permitting granting of post-adjudicatory improvement period). *But see* W. Va. Code § 49-4-602(d) (2015) (Repl. Vol. 2015) (delineating circumstances in which familial reunification efforts are not required). Whether an adjudicatory hearing will accomplish these goals under the facts of the case *sub judice*, however, requires us to consider not only the governing law but also the legislative intent underlying these statutory enactments.

When construing a statute, we first look to the statute's language to determine whether the Legislature's intention is plain. In this regard, we have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). *Accord In re Clifford K.*, 217 W. Va. 625, 633, 619 S.E.2d 138, 146 (2005) ("The cardinal rule of statutory interpretation is to first identify the legislative intent expressed in the promulgation at issue."); *Ewing v. Board of Educ. of Cty. of Summers*, 202 W. Va. 228, 241, 503 S.E.2d 541, 554 (1998) ("To interpret a statutory provision, we must determine the legislative intent underlying the statute at issue." (citation omitted)). If the Legislature's intention is clear, we need not further construe the statute. Thus, "if the legislative intent is clearly expressed in the statute, this Court is not at liberty to construe the statutory provision[.]." *Dan's Carworld, LLC v. Serian*, 223 W. Va. 478, 484, 677 S.E.2d 914, 920

10

(2009).  *Accord Henry v. Benyo*, 203 W. Va. 172, 177, 506 S.E.2d 615, 620 (1998) ("When the legislative intent of a statute's terms is clear, we will . . . not construe . . . its plain language."); Syl. pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.").  Rather, we apply a statute whose language is plain to the facts before us consistently with the expressed legislative intent.  "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein."  Syl. pt. 1, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965).  *Accord* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").  Upon reviewing W. Va. Code § 49-4-601(i), we find the statutory language to be plain and in need of no further interpretation.  Instead, we will apply these tenets to the facts presently before us.

11

In enacting the West Virginia Child Welfare Act, W. Va. Code § 49-1-101 *et seq.*, of which W. Va. Code § 49-4-601(i) is a part, the Legislature has set forth numerous purposes for this body of legislation. *See generally* W. Va. Code § 49-1-105 (2015) (Repl. Vol. 2015); W. Va. Code § 49-2-801 (2015) (Repl. Vol. 2015). Relevant to the instant proceeding are the goals of identifying child abuse and neglect;[5] protecting the children who have been subjected to abuse and neglect;[6] and remedying the conditions that led to the abuse and neglect in the first instance.[7]

Here, it is apparent that holding an adjudicatory hearing upon the abuse and neglect petition that the DHHR filed regarding I.M.K. is consistent with the statute defining

---

[5]W. Va. Code § 49-1-105(b)(8) (2015) (Repl. Vol. 2015) (stating "[t]he child welfare . . . system shall: [p]rovide for early identification of the problems of children and their families, and respond appropriately to prevent abuse and neglect").

[6]W. Va. Code §§ 49-1-105(b)(1, 2) (recognizing that Child Welfare Act serves to (1) "[a]ssure each child care, safety and guidance" and (2) "[s]erve the mental and physical welfare of the child"); W. Va. Code § 49-2-801(1) (2015) (Repl. Vol. 2015) (observing purpose "[t]o protect the best interests of the child").

[7]W. Va. Code §§ 49-1-105(b)(3, 5, 6, 7) (pledging to (3) "[p]reserve and strengthen the child family ties"; (5) "[d]evelop and establish procedures and programs which are family-focused rather than focused on specific family members, except where the best interests of the child or the safety of the community are at risk"; (6) "[i]nvolve the child, the child's family or the child's caregiver in the planning and delivery of programs and services"; and (7) "[p]rovide community-based services in the least restrictive settings that are consistent with the needs and potentials of the child and his or her family"); W. Va. Code §§ 49-2-801(2, 3, 4) (identifying purposes as including (2) "[t]o offer protective services in order to prevent any further harm to the child or any other children living in the home"; (3) "[t]o stabilize the home environment, to preserve family life whenever possible"; and (4) "[t]o promote adult responsibility for protecting children").

12

adjudicatory hearing procedures, this Court's prior precedent, and the legislative intent underlying abuse and neglect proceedings generally. First, all of the objectives contemplated by W. Va. Code § 49-4-601(i) may be accomplished by holding an adjudicatory hearing in this case. As noted above, at the conclusion of the adjudicatory hearing, the court is directed to "make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing [or] neglecting." *Id.* Moreover, such "findings must be based upon conditions existing at the time of the filing of the petition." W. Va. Code § 49-4-601(i). *Accord* Syl. pt. 1, in part, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) ("*W. Va. Code*, 49-6-2(c) [1980] [now W. Va. Code § 49-4-601(i)], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.'"). Insofar as the DHHR filed its petition alleging I.M.K. to be an abused and/or neglected child shortly after the child's birth and while the child was still alive, the court has at its disposal allegations upon which it may make the requisite findings and conclusions. The fact that the subject child has since died, presumably as a result of the severity of the injuries inflicted by the alleged abuse and/or neglect, though tragic, does not foreclose the circuit court's inquiry because the conditions alleged to exist at the time of the petition's filing are the determinative factors–not those that may later arise.[8]

---

[8]Such later occurring circumstances may, however, be considered by the court
(continued...)

13

Moreover, our prior precedent also necessitates holding an adjudicatory hearing in this case. In the case of *In Re: A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017), the Court was faced with a nearly identical factual scenario: an infant born with the presence of drugs in its system and attendant, extremely severe injuries as a result thereof.[9] Upon those facts, we considered whether the presence of drugs in a child's system at birth constitutes abuse and/or neglect. Given the devastating effects such illicit substances have on a fragile

---

[8](...continued)
if the DHHR files an amended petition setting forth such new allegations of abuse and/or neglect. *See* W. Va. R. Proc. for Child Abuse & Neglect Proceeds. 19 (providing for amendments to petition alleging child has been abused and/or neglected); Syl. pt. 2, in part, *State v. Julie G.*, 201 W. Va. 764, 500 S.E.2d 877 (1997) ("The proper method of presenting new allegations to the circuit court is by requesting permission to file an amended petition pursuant to Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings."); Syl. pt. 4, *Julie G.*, 201 W. Va. 764, 500 S.E.2d 877 ("Under Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, amendments to an abuse/neglect petition may be allowed at any time before the final adjudicatory hearing begins. When modification of an abuse/neglect petition is sought, the circuit court should grant such petition absent a showing that the adverse party will not be permitted sufficient time to respond to the amendment, consistent with the intent underlying Rule 19 to permit liberal amendment of abuse/neglect petitions."). *See also* Syl. pt. 5, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006) ("To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the Department of Health and Human Resource's petition, then pursuant to Rule 19 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* [1997] the circuit court has the inherent authority to compel the Department to amend its petition to encompass the evidence or allegations.").

[9]The infant's critical condition in the case of *In Re: A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260, was also due, in part, to the child's affliction with twin-to-twin transfusion syndrome. *See id.*, 239 W. Va. at 385 n.2, 801 S.E.2d 263 n.2.

14

infant, we examined the governing statutes defining abuse[10] and neglect,[11] as well as our

---

[10]The definition of an "abused child" is set forth in W. Va. Code § 49-1-201 (2015) (Repl. Vol. 2015):

> "Abused child" means a child whose health or welfare is being harmed or threatened by:
>
> (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment;
>
> (B) Sexual abuse or sexual exploitation;
>
> (C) The sale or attempted sale of a child by a parent, guardian or custodian in violation of section fourteen-h, article two, chapter sixty-one of this code; or
>
> (D) Domestic violence as defined in section two hundred two, article twenty-seven, chapter forty-eight of this code.

[11]W. Va. Code § 49-1-201 defines a "neglected child" as follows:

> "Neglected child" means a child:
>
> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian;
>
> (B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian;

(continued...)

15

cases construing the same.[12] Informed by this analysis, we ultimately held that

> [w]hen a child is born alive, the presence of illegal drugs in the child's system at birth constitutes sufficient evidence that the child is an abused and/or neglected child, as those terms are defined by W. Va. Code § 49-1-201 (2015) (Repl. Vol. 2015), to support the filing of an abuse and neglect petition pursuant to W. Va. Code § 49-4-601 (2015) (Repl. Vol. 2015).

Syl. pt. 1, *In Re: A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260.

Here, as in *A.L.C.M.*, the subject child was born with drugs in its system and sustained injuries therefrom sufficient to form the basis of the DHHR's petition alleging that the child had been abused and/or neglected by the parents' drug abuse. Insofar as substantially the same fact pattern exists in this case, there is sufficient authority upon which the circuit court could base findings of fact and conclusions of law that I.M.K. is an abused and/or neglected child following an adjudicatory hearing. Furthermore, because the

---

[11](...continued)
(C) "Neglected child" does not mean a child whose education is conducted within the provisions of section one [§ 18-8-1], article eight, chapter eighteen of this code.

[12]*See* Syl. pt. 3, in part, *In re Betty J.W.*, 179 W. Va. 605, 371 S.E.2d 326 (1988) ("W. Va. Code, 49-1-3(a) (1984) [now W. Va. Code § 49-1-201], in part, defines an abused child to include one whose parent knowingly allows another person to commit the abuse."). *See also* Syl. pt. 7, *West Virginia Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996) ("The term 'knowingly' as used in West Virginia Code § 49-1-3(a)(1) (1995) [now W. Va. Code § 49-1-201] does not require that a parent actually be present at the time the abuse occurs, but rather that the parent was presented with sufficient facts from which he/she could have and should have recognized that abuse has occurred.").

allegations of abuse and/or neglect to be considered during adjudication are those that existed at the time the petition was filed, I.M.K.'s tragic passing does not preclude the circuit court from considering such facts during an adjudicatory hearing. Finally, the factual distinction regarding the death of the child after the abuse and neglect petition was filed in the case *sub judice* does not lessen or ameliorate the conditions alleged in the petition to have constituted abuse and/or neglect at the time the petition was filed; rather, if the subject petition is amended to reference the fact of and circumstances leading to the child's death, the fatal consequences of the child's injuries may serve as further proof that the conduct alleged therein was abusive and/or neglectful.

While an adjudicatory hearing has been described as a prerequisite to a final disposition of the abuse and neglect proceeding and establishment of permanency for the subject child[13]–sadly both of which goals have been hampered by the tragic circumstances of the instant case–this procedural stepping stone is not the only reason an adjudicatory

---

[13]*See* Syl. pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) ("In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code, 49-6-5 [now W. Va. Code § 49-4-604], it must hold a hearing under W. Va. Code, 49-6-2 [now W. Va. Code § 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case."). *See also In re Beth Ann B.*, 204 W. Va. 424, 427, 513 S.E.2d 472, 475 (1998) ("The statutory scheme applicable in child abuse and neglect proceedings provides for an essentially two phase process. The first phase culminates in an adjudication of abuse and/or neglect. *See W. Va. Code* § 49-6-2(c) (1996) [now W. Va. Code § 49-4-601(i)]. The second phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. *See W. Va. Code* § 49-6-5 (1996) [now W. Va. Code § 49-4-604]." (footnote omitted)).

hearing is held.  Rather, an adjudication also enables a court to identify those who are responsible for the subject abuse and/or neglect and allows the parties and the DHHR to work towards ameliorating these conditions to prevent such abuse or neglect from occurring in the future.  In this regard, we have recognized that "[t]he primary purpose of making an initial finding of abuse or neglect is to protect the interest of all parties and to justify the continued jurisdiction under W. Va. Code, 49-6-1 [now W. Va. Code § 49-4-601], *et seq.*" *State v. T.C.*, 172 W. Va. 47, 50, 303 S.E.2d 685, 689 (1983).  Such an adjudication facilitates the State's intervention in the case to protect the subject children and to work towards curing the conditions that gave rise to the proceeding in the first instance:

> It is apparent that the state's right to intervene is predicated upon its initial showing that there has been child abuse or neglect, which constitutes unfitness on the part of the parents to continue, either temporarily or permanently, in their custodial role. . . .  [Thus] the parties cannot circumvent the threshold question, which is the issue of abuse or neglect.

*State v. T.C.*, 172 W. Va. at 51-52, 303 S.E.2d at 690 (footnote omitted).


A further function of the adjudicatory hearing is to identify and document instances of abuse and neglect to ensure the safety of additional children in the household. *See, e.g.,* Syl. pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995) ("Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual

18

abuse but is at risk of being abused is an abused child under W. Va. Code, 49-1-3(a) (1994) [now W. Va. Code § 49-1-201].”); Syl. pt. 8, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) (“Prior acts of violence, physical abuse, or emotional abuse toward other children are relevant in a termination of parental rights proceeding, are not violative of W. Va. R. Evid. 404(b), and a decision regarding the admissibility thereof shall be within the sound discretion of the trial court.”). Where, as here, there is only one child who is the subject of the abuse and neglect proceedings and where, as here, there are no other children in the home, an adjudication still is vital because it serves the recognized purposes of identifying, documenting, and “remedying conditions”[14] that could, if left unchecked, potentially harm future children in the household. *See, e.g.,* Syl. pt. 2, in part, *West Virginia Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996) (holding

---

[14]It goes without saying that services aimed at remedying the conditions giving rise to a child welfare proceeding cannot be provided to fractured families if there is not first an adjudicatory determination that abuse and/or neglect has occurred so as to warrant the provision of such assistance. *See* Syl. pt. 5, *State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987) (“The purpose of the family case plan as set out in W. Va. Code, 49-6D-3(a) (1984) [now W. Va. Code § 49-4-604(a)], is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems.”), *superseded by statute on other grounds as stated in State ex rel. Virginia M. v. Virgil Eugene S., II*, 197 W. Va. 456, 461 n.9, 475 S.E.2d 548, 553 n.9 (1996) (per curiam). *See also* Syl. pt. 4, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) (“In formulating the improvement period and family case plans, courts and social service workers should cooperate to provide a workable approach for the resolution of family problems which have prevented the child or children from receiving appropriate care from their parents. The formulation of the improvement period and family case plans should therefore be a consolidated, multi-disciplinary effort among the court system, the parents, attorneys, social service agencies, and any other helping personnel involved in assisting the family.”).

that "the purpose of an abuse and neglect proceeding is remedial"). If such abusive and/or neglectful conditions are not first identified, they cannot be recorded and remedied to ensure the safety and well-being of both current and future children of the respondent parties. *See generally* Syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."). Thus, it is apparent that an adjudicatory hearing is an essential part of an abuse and neglect proceeding because before the conditions of abuse and/or neglect can be corrected, they first must be identified and documented–which is precisely the role played by an adjudication.

In light of the foregoing analysis, we therefore hold that when an infant child is born alive and becomes the subject of an abuse and neglect petition, but the child dies during the pendency of the abuse and neglect proceedings, the matter may proceed to an adjudicatory hearing, and the presiding circuit court may make findings of fact and conclusions of law as to whether the subject child is an abused and/or neglected child and whether the respondents are abusing and/or neglectful as contemplated by W. Va. Code § 49-4-601(i) (2015) (Repl. Vol. 2015). The circuit court's findings and conclusions regarding the existence of abuse and/or neglect must, however, be based upon the conditions alleged in the abuse and neglect petition and any amendments thereto. Accordingly, we answer the first certified question in the affirmative and remand this matter to the circuit court with

20

instructions that it conduct an adjudicatory hearing in the underlying abuse and neglect proceeding.

### B. *Guardian ad Litem*

The second question the circuit court certified to this Court is as follows:

> If an infant child is born alive, but dies during the pendency of an Abuse and Neglect proceeding, and said infant child is the only child in the home, should the *Guardian ad Litem* remain a party to the proceeding to advocate for the rights of the deceased child?

Although the circuit court did not provide an answer to this question, it presumably answered it in the affirmative insofar as it required the Guardian to remain a party to the case.

As to this issue, the DHHR argues that the Guardian ad Litem should remain in the case through adjudication of the parents as abusive and/or neglectful because the Guardian's independent investigation of the child's condition and circumstances is instructive to the court. After adjudication, however, the DHHR suggests that the Guardian is no longer needed because the child would not be impacted by any of the dispositional alternatives for the parents and permanency for the child is no longer at issue.

21

For her part, the Guardian requests that whether she should remain in an abuse and neglect case following the death of the child she represents should be left to the sound discretion of the circuit court to be determined on a case-by-case basis.

By contrast, Mother asserts that the Guardian ad Litem should be dismissed from the case following the child's death because the case, itself, should be dismissed. Moreover, Mother contends that, in light of the child's death, the Guardian no longer has a client to represent in these proceedings.

Father echoes Mother's argument and states that the Guardian should not remain a party to abuse and neglect proceedings following the death of the subject child because there is no live client to represent, and there no longer is a polar star of the child's best interests to guide the court's decision of the case.

With respect to the second certified question, we are asked to determine whether a guardian ad litem should remain a party to an abuse and neglect proceeding when the child subject thereto dies during the pendency of the case. Pursuant to W. Va. Code § 49-4-601(f)(1), children who are parties to an abuse and neglect proceeding are entitled to counsel:

> In any proceeding under this article, the child . . . has the right to be represented by counsel at every stage of the

proceedings and shall be informed by the court of their right to be so represented and that if they cannot pay for the services of counsel, that counsel will be appointed.

We previously have found this statutory language to be plain insofar as it guarantees a child's statutory right to legal representation during abuse and neglect proceedings:

Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W. Va. Code*, 49-6-2(a) [1992] [now W. Va. Code § 49-4-601(f)] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client.

Syl. pt. 5, in part, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993). Moreover, we have recognized that, "in neglect and abuse proceedings the child has the right to be represented by an attorney at *all* stages of the proceedings[.]" *James M. v. Maynard*, 185 W. Va. 648, 659, 408 S.E.2d 400, 411 (1991) (emphasis added; citations omitted). *Accord State v. Michael M.*, 202 W. Va. 350, 356 n.11, 504 S.E.2d 177, 183 n.11 (1998) ("[G]uardians *ad litem* have a duty to fully represent the interests of their child wards at *all* stages of the abuse and/or neglect proceedings." (emphasis added)); Syl. pt. 3, *In re Scottie D.*, 185 W. Va. 191, 406 S.E.2d 214 (1991) ("In a proceeding to terminate parental rights pursuant to *W. Va. Code*, 49-6-1 to 49-6-10 [now W. Va. Code § 49-4-601 to 49-4-610], as

23

amended, a guardian *ad litem*, appointed pursuant to *W. Va. Code*, 49-6-2(a) [now W. Va. Code § 49-4-601(f)], as amended, must exercise reasonable diligence in carrying out the responsibility of protecting the rights of the children. This duty includes exercising the appellate rights of the children, if, in the reasonable judgment of the guardian *ad litem*, an appeal is necessary.").

Integral to the child's right to counsel is that such representation be effective and permit the guardian ad litem to serve as an advocate for the child he/she represents. "During the proceedings, in an abuse and neglect case, a guardian ad litem is charged with the duty to faithfully represent the interests of the child and effectively advocate on the child's behalf." *In re Elizabeth A.*, 217 W. Va. 197, 204, 617 S.E.2d 547, 554 (2005) (per curiam). Thus, it is essential that a guardian ad litem participate in *all* the various stages of the abuse and neglect proceedings to accomplish this goal of advocacy and protection of the child's best interests. Indeed, we previously have held that

> [t]here is a clear legislative directive that guardians ad litem and counsel for both sides be given an opportunity to advocate for their clients in child abuse or neglect proceedings. West Virginia Code § 49-6-5(a) (1995) [now W. Va. Code § 49-4-601(h)] states that the circuit court shall give both the petitioner and respondents an opportunity to be heard when proceeding to the disposition of the case. This right must be understood to mean that the circuit court may not impose unreasonable limitations upon the function of guardians ad litem in representing their clients in accord with the traditions of the adversarial fact-finding process.

24

Syl. pt. 3, *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 470 S.E.2d 205 (1996). *Accord In re Christina L.*, 194 W. Va. at 453, 460 S.E.2d at 699 (same). The guardian ad litem's role in this regard is critical to ensure that vital information regarding the child is provided to the court charged with determining the child's best interests. *See generally* Syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589.

As for the duration of the guardian ad litem's representation of an allegedly abused and/or neglected child, we have held that "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400. Where, as in the case *sub judice*, the subject child has died, allegedly as a result of abuse and/or neglect, before permanency has been attained, the guardian ad litem's role as the child's advocate becomes even more essential for it is the child's representative who must speak for the child whose voice has been forever silenced. In this regard, the guardian can, and must, provide crucial information to the circuit court regarding the child's condition to inform the court's adjudication of the child's parents as abusing and/or neglectful. As the child's advocate and legal representative, the guardian ad litem is in the best position to speak to the circumstances leading to the child's death and to ensure that justice is achieved for the child. Accordingly, based upon these authorities and the crucial role of guardians ad litem as the legal representatives of children subject to abuse and neglect proceedings, we

25

hold that if an infant child is born alive, becomes the subject of an abuse and neglect petition, and is appointed a guardian ad litem to represent him/her in such case, but the child dies during the pendency of the abuse and neglect proceedings, the guardian ad litem remains involved in the case to advocate for the child until the conclusion of such proceedings.[15] Therefore, we also answer the second certified question in the affirmative.

## IV.

## CONCLUSION

In response to the two questions certified by the Circuit Court of Lewis County by order entered September 26, 2017, we answer both questions in the affirmative and remand this case for further proceedings consistent with this opinion.

Certified Questions Answered.

---

[15]Guardians ad litem continuing their representation of children in abuse and neglect proceedings are directed to comply with the requirements of Rule 18a of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings as well as Appendix A thereto.