## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* C.W.

No. 19-0505  (Mingo County 18-JA-14)

**FILED**
**May 27, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

The petitioner herein, Father C.J. ("Father"),[1] by counsel Susan J. Van Zant, appeals an order entered April 17, 2019, by the Circuit Court of Mingo County terminating Father's parental rights to his minor child, C.W.  The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S. L. Evans, and the child's Guardian ad Litem ("Guardian"), Cullen C. Younger, both respond in support of the circuit court's order.

Upon consideration of the parties' briefs, oral arguments, and the appendix record, this Court concludes that the circuit court erred by terminating Father's parental rights because the DHHR failed to present sufficient evidence, much less prove by clear and convincing evidence, that Father had abused and/or neglected his child as alleged in the DHHR's petition.  Accordingly, we reverse the circuit court's order and remand this case for further adjudicatory proceedings to determine whether Father has abused and/or neglected his child.  Because this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

The DHHR instituted this abuse and neglect proceeding in February 2018 when Mother B.W. ("Mother") gave birth to her youngest child, who is not at issue in this proceeding but who tested positive for cocaine shortly after her birth.  Additionally, upon her admission to the hospital prior to the child's birth, Mother tested positive for cocaine

---

[1]In cases, such as this, involving sensitive facts, we will refer to the parties by their initials only.  *See* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children); *In re I.M.K.*, 240 W. Va. 679, 682 n.1, 815 S.E.2d 490, 493 n.1 (2018); *In re S.H.*, 237 W. Va. 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016).

1

and marijuana. The DHHR's petition further alleged that Mother's prenatal physician attempted to refer her for counseling and substance abuse treatment during her pregnancy, but that Mother either had not followed through with such services or had abandoned such programs. Finally, the petition averred that the father of each of Mother's three children, including C.J., who is the father of Mother's child C.W., at issue herein, had failed to protect his child from Mother's substance abuse. Although most of the petition focused on Mother's alleged misconduct, with specific respect to Father, the DHHR represented that Mother had "stated that C[.] J[.] is C[.W.]'s alleged father, and he does visit with her, but they do not have a visitation plan." Finally, the DHHR requested "care, custody and control of the respondent children, due to the mother's drug usage during pregnancy, and C[.J.'s] . . . knowledge of her drug use, but failure to protect" his child.

By order entered February 20, 2018, the Circuit Court of Mingo County granted emergency custody of the children to the DHHR. In support of its order, the DHHR found, with respect to Father, that "[t]he West Virginia Department of Health and Human Resources has substantiated that the Respondent C[.] J[.] has failed to protect the subject child, C[.] W[.]"[2] The DHHR then placed the children, including C.W., with their maternal grandmother. Thereafter, the circuit court held a preliminary hearing on February 28, 2018, and, in its corresponding order entered on May 1, 2018,[3] the court succinctly reiterated its

---

[2]Although the circuit court directed, in its emergency order, that the parents' child support obligations be calculated, it is not apparent from any of the court's subsequent orders that such support obligations were assessed or that the parents have begun making these payments. On remand, the circuit court should ensure that the parents' child support obligations have been calculated and that such monies are being collected on behalf of the parents' children. *See* W. Va. R. P. Child Abuse & Neglect Proc. 16a (requiring entry of child support orders in cases involving change in child's custodial placement).

[3]In reviewing the appendix record, this Court has observed a disturbing trend in this case of substantial delays between the dates upon which hearings are held and the entry of orders resulting from those hearings. We remind circuit courts of the rules establishing strict guidelines for the entry of abuse and neglect orders and the need to be ever vigilant in expediting abuse and neglect matters in an effort to promptly achieve permanency for the children involved in such proceedings. *See* W. Va. R. P. Child Abuse & Neglect Proc. 27 (establishing time within which adjudicatory hearing order must be entered) & 36 (dictating filing period for entry of dispositional hearing order). *See also* W. Va. Code § 49-4-601(j) (prioritizing abuse and neglect proceedings); Syl. pt. 1, in part, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) ("Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.").

earlier finding of "probable cause to believe that the Respondents [Mother and the three children's fathers, including Father C.J.] abused and/or neglected the subject-children [sic]." Following an adjudicatory hearing on June 6, 2018, the circuit court entered an adjudicatory order ten months later on April 17, 2019, again finding "by clear and convincing evidence that the Respondents [including Father] abused and neglected the subject-children [sic]."[4] The circuit court then held a dispositional hearing on January 26, 2019, and by order entered April 17, 2019, found that "the Respondent [sic] is [sic] presently unwilling or unable to correct the conditions of abuse and/or neglect that necessitated the removal of the subject-children" and that "there is no reasonable likelihood the Respondents can or will correct the conditions in the near future." As a result, the court terminated Father's parental rights to his child.

Father was absent from the preliminary hearing, did not attend the subsequent adjudicatory hearing, and also failed to appear for the dispositional hearing.[5] Neither did Father communicate with his appointed counsel during the underlying abuse and neglect proceedings. Nevertheless, Father claims that he maintained contact with his child throughout the entire time that the underlying abuse and neglect case was pending. He now appeals the circuit court's termination of his parental rights contending that the DHHR failed to prove his alleged abuse and/or neglect of C.W. by the requisite clear and

---

Although we are cognizant of difficulties associated with the current Covid-19 global pandemic and the Court's declaration of a judicial emergency during this time, such concerns and state of judicial emergency were not at issue at the time of the underlying proceedings, which were conducted during 2018 and 2019. See text, *infra*, for additional orders in the underlying abuse and neglect proceedings that were entered significantly after the hearings to which they pertain.

[4]At the beginning of the adjudicatory hearing, Mother voluntarily relinquished her parental rights to all three of her children at issue in the underlying abuse and neglect case, including C.W. who is the subject of the instant appeal.

[5]Although not apparent from the circuit court's orders, representations of counsel set forth in the transcripts of the circuit court's hearings suggest that there was a question as to whether Father, as well as other fathers of Mother's children, had actually been served with the DHHR's abuse and neglect petition so as to receive notice of this case, and, therefore, the circuit court ordered that Father, and the other such fathers, be served by publication. Even after service by publication, however, Father did not appear at any of the underlying hearings or communicate with his counsel about this case.

convincing evidence and that the circuit court erred by not granting him visitation with his child.[6]

With respect to this Court's review of a circuit court's final order in an abuse and neglect case, we previously have held:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

The main issue presented by this appeal is whether the circuit court erred in terminating Father's parental rights to his child. Before a court may terminate a parent's parental rights, however, the court first must adjudicate the parent as an abusive and/or neglectful parent.

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

W. Va. Code § 49-4-601(i). To support such a determination, both the governing statute and our prior case law make clear that the allegations of abuse and/or neglect set forth in the DHHR's petition must be proved by clear and convincing evidence. *See id. See also*

---

[6]Mother relinquished her parental rights to C.W. The permanency plan for this child is adoption by the child's current foster family.

4

Syl. pt. 1, in part, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) ("W. Va. Code, 49-6-2(c) [1980] [now W. Va. Code § 49-4-601(i)], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.'").

Moreover, to adjudicate a parent as abusive, it is not necessary for the parent, him/herself, to have committed the acts constituting abuse. Rather, having knowledge of and/or acquiescing in the abusive behavior is sufficient to adjudicate a parent as abusive. *See* W. Va. Code § 49-1-201 ("'Abused child' means a child whose health or welfare is being harmed or threatened by: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home."); Syl. pt. 7, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996) ("The term 'knowingly' as used in West Virginia Code § 49-1-3(a)(1) (1995) [now W. Va. Code § 49-1-201] does not require that a parent actually be present at the time the abuse occurs, but rather that the parent was presented with sufficient facts from which he/she could have and should have recognized that abuse has occurred."); Syl. pt. 3, *In Interest of Betty J.W.*, 179 W. Va. 605, 371 S.E.2d 326 (1988) ("W. Va. Code, 49-1-3(a) (1984) [now W. Va. Code § 49-1-201], in part, defines an abused child to include one whose parent knowingly allows another person to commit the abuse. Under this standard, termination of parental rights is usually upheld only where the parent takes no action in the face of knowledge of the abuse or actually aids or protects the abusing parent.").

In his appeal to this Court, Father alleges that the circuit court erred by terminating his parental rights to his child because the DHHR failed to present sufficient evidence to prove its allegations of abuse and/or neglect. We agree. The DHHR presented scant evidence to establish that Father had abused and/or neglected his child by failing to protect her from Mother's substance abuse, but scant evidence does not satisfy the "clear and convincing" level of evidence required for an adjudication. *See* W. Va. Code § 49-4-601(i); Syl. pt. 1, in part, *S.C.*, 168 W. Va. 366, 284 S.E.2d 867.

Moreover, representations of counsel during oral argument suggest that Father did not interact with Mother when he had contact with his child because the child was staying with another family member. If this is, in fact, the case, the DHHR also has failed to address whether Father "knowingly" allowed his child to be abused and/or neglected by another sufficient to support a finding of abuse. *See* W. Va. Code § 49-1-201; Syl. pt. 7,

*Doris S.*, 197 W. Va. 489, 475 S.E.2d 865; Syl. pt. 3, *Betty J.W.*, 179 W. Va. 605, 371 S.E.2d 326.

In light of the dearth of evidence in this case to support the circuit court's disposition terminating Father's parental rights, we reverse the circuit court's order of April 17, 2019, and remand this case to the circuit court to conduct an adjudicatory hearing to determine whether there exists clear and convincing evidence to support the DHHR's allegations that Father abused and/or neglected his child.[7]

Reversed and Remanded.

**ISSUED:**     May 27, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins

**DISSENTING AND WRITING SEPARATELY:**

Justice Margaret L. Workman
Justice John A. Hutchison

Workman, J., dissenting:

I dissent from the majority's decision to permit petitioner to willfully ignore the proceedings below, yet escape the consequences of his indifference to his parental rights. Petitioner failed to appear at any of the five hearings conducted below over the course of a year—proceedings where the termination of his parental rights was plainly being pursued. Petitioner evaded contact with DHHR and ignored his own court-appointed attorney until *after* his parental rights were terminated. With scarcely a mention of petitioner's complete refusal to appear and defend his parental rights, the majority now inexplicably reverses his adjudication due to the "scant" evidence of petitioner's failure to protect C. W. from her mother, B. W.'s, rampant drug abuse. What the majority fails to

---

[7]Due to our resolution of this case and the need to remand this matter for further proceedings, it is premature to consider Father's additional assignment of error regarding post-termination visitation.

appreciate is that even "scant" evidence of abuse and/or neglect, *when intentionally left unrebutted by a parent*, may be sufficiently clear and convincing. Our caselaw has made that abundantly clear for nearly two and a half decades.

In Syllabus Point Two of *West Virginia Department of Health & Human Resources ex rel. Wright v. Doris S.*, this Court held:

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian *fails to respond to probative evidence offered against him/her* during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as *affirmative evidence* of that individual's culpability.

197 W. Va. 489, 475 S.E.2d 865 (1996) (emphasis added). In short, if an abuse and neglect respondent appears in the proceedings and stands silent in the face of the allegations, that silence may be considered affirmative evidence of the abuse and/or neglect. For reasons that are unclear, the majority would grant greater leniency to a respondent who refuses to so much as even make an appearance.

Obviously, *Doris S.* does not only apply where a parent actually appears at the proceeding and then fails to defend himself. Where a parent, properly served, refuses so much as to even appear, he is standing just as silent as if he were sitting in the courtroom. What this holding lends to the "scant" evidence bemoaned by the majority is that petitioner's failure to appear is tantamount to silence, which is affirmative evidence of culpability. Therefore, petitioner's silence and refusal to participate became a part of the body of evidence against him.

More to the point, "the invocation of silence by a parent or guardian in an abuse and neglect proceeding goes to the heart of the treatability question which is essential in these cases, as the nature of the proceedings is remedial and not punitive." *Id*. at 498, 475 S.E.2d at 874. Where a parent not only refuses to respond to abuse and neglect allegations, but refuses altogether to participate in the proceedings to protect his parental rights, on what basis can his rights be preserved? How can a parent stood credibly accused[1]

---

[1] The majority states simply that the evidence was "scant" on petitioner's failure to protect. However, there was admitted twice-daily cocaine use on the part of B. W. and evidence that petitioner visited regularly with C. W., yet C. W.'s exposure to the substance abuse continued unabated. The majority has effectively found DHHR's proof of a "negative," *i.e.* a "failure" to protect, inadequate. What more affirmative proof could DHHR offer to establish that petitioner did "nothing"? *See Com. v. 1997 Chevrolet*, 106 A.3d 836, 869 (Pa. Commw. Ct. 2014) ("[A] party required to prove a negative is saddled

of failing to protect his child correct any such conditions of abuse and neglect where he will not even participate in the process by appearing?[2]

The majority badly exposes itself by basing its decision primarily on a "representation[] of counsel during oral argument[.]" The majority states that petitioner's awareness of B. W.'s drug abuse may have been hampered because visitation with C. W. occurred at the home of "another family member," rather than at B. W.'s home. First, there is no such evidence whatsoever in the record on appeal and is therefore an improper basis upon which to base reversal and remand. Secondly, what petitioner's counsel stated during arguments was that the visitations occurred "at the maternal grandmother's home."[3] As testimony contained in the appendix record reveals, visitation occurred there because that is where *both C. W. and B. W.* lived.[4]

Nonetheless, the majority is concerned that "[i]f this is, in fact, the case" it is questionable whether DHHR proved petitioner "knowingly" failed to protect C. W. This Court should not be engaging in speculation about what the evidence below *might* reveal if only petitioner were given yet *another* chance to appear and defend himself. If the

---

with a 'virtually impossible burden.'" (quoting *Com. v. Buonopane*, 599 A.2d 681, 683 n.2 (Pa. Super. Ct. 1991)).

[2] During oral arguments, petitioner's counsel indicated that petitioner explained his failure to appear by insisting that he simply did not understand his rights were in jeopardy—a belief of which his counsel could have easily disabused him had he so much as bothered to respond to her efforts at contact. Counsel also suggested that because petitioner alleged that his visitation continued uninterrupted during the proceedings, he thought and hoped the status quo would remain. This is merely further evidence that petitioner had no interest in or intention of serving as a full-time parent to C. W., preferring to simply "visit" with her despite the fact that he knew her mother's parental rights were in jeopardy.

[3] Archived oral arguments have recently been made available on the Court's website. www.courtswv.gov/supreme-court/calendar-docket.html.

[4] Testimony from the father of the newborn which was subject of the proceedings indicated that B. W. lived with her mother (i.e. the maternal grandmother) at least throughout her pregnancy:

Q.     During that nine months did you and [B. W.] live together?

A.     No, we did not. She lived with her mother.

8

majority is concerned that petitioner was not aware of B. W.'s drug abuse, petitioner had every opportunity (five, in fact) to appear and tell the court as much.

Accordingly, for the foregoing reasons, I respectfully dissent.

**Hutchison, J., dissenting:**

The circuit court's termination order should be affirmed. There is evidence in the record to support the petitioner's adjudication, and he should not be given a second chance to litigate this case in light of his complete and utter failure to participate in any aspect of the circuit court's abuse and neglect proceedings.

The petitioner father was charged with abusing and neglecting his child, C.W., by failing to protect her from abuse and neglect inflicted by the mother, B.W. West Virginia Code § 49-1-201 (2018) expressly defines "abused child" to include a child whose health or welfare is threatened by a "parent, guardian, or custodian who . . . knowingly allows another person to inflict[] physical injury or mental or emotional injury[] upon the child or another child in the home." *See e.g.,* Syl. Pt. 4, *W.Va. Dept. of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996) (recognizing that knowingly failing to protect child constitutes abuse).

Critically, the term "knowing" in West Virginia Code § 49-1-201 encompasses both "known" and "should have known":

> The term "knowingly" as used in West Virginia Code § 49-1-3(a)(1) (1995) [now W.Va. Code 49-1-201] does not require that a parent actually be present at the time the abuse occurs, but rather that the parent was presented with sufficient facts from which he/she could have and should have recognized that abuse has occurred.

*Wright*, 197 W.Va. at 492, 475 S.E.2d at 868, syl. pt. 7. In this case, the petitioner was presented with sufficient facts such that he should have recognized the abuse was occurring.

C.W. and other children in the home were the victims of abuse inflicted by their mother, B.W., as a result of B.W.'s severe and ongoing drug abuse. B.W. admitted using cocaine twice a day every day, as well as marijuana, while she was caring for the children. Her youngest child was born with illegal drugs in her system. Despite this drug abuse, the

9

petitioner entrusted B.W. with the care of his child. The petitioner did not live in the home with C.W. and B.W., but he lived in the same county and B.W. testified that he visited with C.W. before the abuse and neglect petition was filed. Indeed, in his brief to our Court, the petitioner admits that he "had significant parenting time with the child prior to the Petition being filed and a significant bond" with the child. Thus, if the petitioner really had as much parenting time with his child as he and B.W. claim, then he should have known that his child was at risk due to B.W.'s rampant, uncontrolled drug use. By taking no steps to ensure C.W.'s safety, he was not acting as a fit parent who protects his child from harm and the threat of harm. Moreover, during the preliminary hearing, the CPS Worker assigned to investigate this case testified to her conclusion that the petitioner had failed to protect the child. The evidence presented during the preliminary hearing was incorporated into the record of the adjudicatory hearing and was unrebutted.

Just as important to my conclusion is the fact that the petitioner failed to participate in any part of this case during the entire year the matter was pending in circuit court.[1] The petitioner failed to appear at any hearings, including the adjudicatory and dispositional hearings. He failed to attend any meetings of the multi-disciplinary treatment team. He failed to contact the DHHR regarding the welfare of his child or the status of the ongoing proceedings. He couldn't even be bothered to communicate with his own lawyer who was court-appointed to assist him. Pursuant to long-standing authority, his failure to respond constitutes affirmative evidence against him:

> "'Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.' Syl. Pt. 2, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996)." Syl. Pt. 2, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002).

Syl. Pt. 2, *In re K.P.*, 235 W.Va. 221, 772 S.E.2d 914 (2015). Frankly, I am at a loss to understand why the majority has chosen to allow the petitioner a "do over" in this matter.

For these reasons, I respectfully dissent.

---

[1] Notably, the petitioner does not assign any error regarding his receipt of service of process of the abuse and neglect petition.