IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**June 2, 2021**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

January 2021 Term

No. 20-0201

In Re:  A. P.

Appeal from the Circuit Court of Harrison County
The Honorable Thomas A. Bedell, Judge
Case No. 17-JA-141-2

REVERSED AND REMANDED WITH DIRECTIONS

Submitted:  May 5, 2021
Filed:  June 2, 2021

Allison S. McClure, Esq.
McClure Law PLLC
Clarksburg, West Virginia
Attorney for Petitioner J. K.


Julie N. Garvin, Esq.
Garvin Law, PLLC
Nutter Fort, West Virginia
Guardian ad Litem for A. P.

Patrick Morrisey, Esq.
Attorney General
Lee Niezgoda, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for West Virginia
Department of Health and Human
Resources

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE WALKER concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl., *McCormick v. Allstate Ins. Co*., 197 W. Va. 415, 475 S.E.2d 507 (1996)."  Syl. Pt. 1, *In re S. W*., 236 W. Va. 309, 779 S.E.2d 577 (2015).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R. M. v. Charlie A. L*., 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "When an infant child is born alive and becomes the subject of an abuse and neglect petition, but the child dies during the pendency of the abuse and neglect proceedings, the matter may proceed to an adjudicatory hearing, and the presiding circuit court may make findings of fact and conclusions of law as to whether the subject child is an abused and/or neglected child and whether the respondents are abusing and/or neglectful as contemplated by W. Va. Code § 49-4-601(i) (2015) (Repl. Vol. 2015). The circuit court's findings and conclusions regarding the existence of abuse and/or neglect must, however, be based upon the conditions alleged in the abuse and neglect petition and any amendments thereto."  Syl. Pt. 2, *In re I.M.K.*, 240 W. Va. 679, 815 S.E.2d 490 (2018).

i

4. "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code, 49-6-5 (1977) may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code, 49-6-5(b) (1977) that conditions of neglect or abuse can be substantially corrected."  Syl. Pt. 2, *In re R. J. M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

5. "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."  Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

6. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

7. West Virginia Code § 49-4-604(c)(6) (2020) does not permit the termination of parental, guardianship, or custodial rights to a child who is deceased at the time of disposition.

WOOTON, J.:

This is an appeal from the Circuit Court of Harrison County's January 27, 2020 order terminating petitioner-mother J. K.'s (hereinafter "petitioner") parental rights to infant A. P., who died during the pendency of these abuse and neglect proceedings.[1] Petitioner was adjudicated a neglectful parent after stipulating to subjecting A. P. to drug abuse and/or a drug-endangered environment and abusing drugs and alcohol during her pregnancy. A. P. failed to recover from the incident which precipitated the abuse and neglect petition and died prior to disposition. The circuit court refused to dismiss the abuse and neglect proceedings, terminating petitioner's parental rights as a result of her failure to comply with the terms of her post-adjudicatory improvement period. More specifically, the circuit court found that, notwithstanding A. P.'s death, termination of petitioner's parental rights under the statutory dispositional alternatives was implicitly permitted by this Court's holding in *In re I.M.K.*, 240 W. Va. 679, 815 S.E.2d 490 (2018) and the overall purposes of the abuse and neglect statutory scheme.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that West Virginia Code § 49-4-

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

604(c)(6) (2020)[2] does not permit termination of parental rights following the death of the child who is the subject of the underlying abuse and neglect petition. Accordingly, we reverse the circuit court's termination of petitioner's parental rights and remand for entry of an order dismissing the proceedings.

## I. FACTS AND PROCEDURAL HISTORY

A. P. was born in early October 2017, positive for buprenorphine for which petitioner had a valid prescription. One day after his birth, petitioner was found co-sleeping with A. P. in her hospital room; the nurses advised of the dangers of co-sleeping and petitioner signed a written agreement not to do so. Early the next morning, petitioner emerged from her room screaming that A. P. was not breathing after being found on his father, M. P.'s, chest while he slept. A. P. was life-flighted to Ruby Memorial Hospital in Morgantown, West Virginia. A cleaning of petitioner's room and subsequent police investigation uncovered drug paraphernalia in petitioner's room, which tested positive for heroin, morphine, and buprenorphine; petitioner and M. P., A. P.'s father, claimed that it belonged to friends who visited the hospital room.

---

[2] At the time of the filing of the petition in this matter, the dispositional alternatives currently contained in West Virginia Code § 49-4-604(c) were codified at West Virginia Code § 49-4-604(b). All references herein are to the current version of the statute, the text of which was not altered from the applicable 2016 or intervening versions of the statute in any way pertinent to this appeal.

On October 11, 2017, an abuse and neglect petition was filed against petitioner and M. P. and they waived their preliminary hearing. On November 17, 2017, petitioner entered a voluntary stipulation of adjudication admitting that "she neglected [A. P.] by[] subjecting the child to drug abuse and/or a drug-endangered environment; and, [] using and abusing alcohol and drugs, including prescription drugs, during her pregnancy."[3] Accordingly, the circuit court adjudicated her neglectful, leaving legal and physical custody of A. P. with the West Virginia Department of Health and Human Resources (hereinafter "DHHR"). Shortly thereafter, upon information from A. P.'s healthcare providers that his condition was worsening, and he was suffering, the court entered an emergency "do not resuscitate" order. On November 22, 2017, petitioner moved for a post-adjudicatory improvement period; A. P. died the next day. An autopsy report listed his cause of death as "unknown."

On January 15, 2018, petitioner moved to dismiss the petition against her, arguing that since A. P. was deceased and there were no other children "in the home," none of the dispositional alternatives contained in West Virginia Code § 49-4-604(c) were applicable, warranting dismissal. Petitioner conceded that although she retained parental rights to an older child, A. V.,[4] her custodial rights to A. V. were terminated in 2012 and

---

[3] Petitioner had also apparently tested positive for THC, barbiturates, and alcohol levels consistent with "heavy drinking the same or previous day" during her pregnancy.

[4] In the guardian ad litem's Rule 11(j) update to the Court, she represented that A. V., as she was known in the underlying proceedings, is now known as A. K.

A. V. was placed under a legal guardianship with petitioner's mother.[5] Alternatively, petitioner moved to certify a question to this Court to determine whether dismissal was required where "the only child named in the Petition dies during the pendency of the case."

On August 21, 2018,[6] the circuit court denied petitioner's motion to dismiss and motion to certify question. Citing the recent opinion of *I.M.K.*, the circuit court concluded that since the purpose of abuse and neglect proceedings as articulated therein was to "remedy[] conditions" of abuse and neglect, disposition must necessarily follow adjudication and "must address such conditions, regardless of the status of the subject child[ren]." The court further found that *I.M.K.*'s holding that adjudication may proceed irrespective of a child's death "[i]mpli[es] that disposition must follow [the] adjudication[.]" Accordingly, on August 29, 2018,[7] the court granted petitioner's motion

---

[5] Petitioner's custodial rights to A. V. were similarly terminated due to substance abuse and failure to comply with the terms of an improvement period. A. V. was placed into a guardianship with petitioner's mother in 2013. As a result of petitioner retaining her parental rights, a second referral as to A. V. occurred in 2016 when petitioner overdosed on methamphetamines. Petitioner was apparently hallucinating and believed A. V. to be present for her overdose, despite the fact that A. V. was safely at home with her legal guardian at the time. A. V. was not made subject of the instant petition at any time.

[6] It appears the circuit court may have been awaiting this Court's decision in *I.M.K.*, discussed more fully *infra*, which issued on June 4, 2018.

[7] The order granting the improvement period, however, was not entered until January 9, 2019.

for improvement period, specifically noting that petitioner was of "child bearing age and [] currently in an alternate disposition 5 as to a previously born female child[.]"

A dispositional/review hearing was set for February 25, 2019. Shortly before, DHHR filed its Family Case Plan requesting termination of petitioner's parental rights to A. P.; petitioner filed a proposed voluntary relinquishment of her parental rights. The court denied petitioner's proposed voluntary relinquishments on the basis of the "public policy issue with respect to any after-born children" as well as A. V. The court took testimony from the assigned Child Protective Services worker who testified that petitioner never returned her phone call, provided current contact information, employment information, or drug treatment information, and that petitioner did not drug screen at any time.

Accordingly, the circuit court found that there was no reasonable likelihood that the conditions of neglect, "namely [petitioner's] substance abuse issues[,]" could be corrected in the near future, citing her "lack of participation in this case thus far and her failure to successfully complete her post-adjudicatory improvement period." The circuit court terminated both M. P.'s[8] and petitioner's parental rights to A. P., finding that termination "serves [A. P.'s] best interests and protects other children, whether children in

---

[8] M. P. did not appeal the termination of his parental rights.

5

existence or future children, giving [A. P.'s] life meaning and importance well beyond his tender months."[9] This appeal followed.

## II.  STANDARD OF REVIEW

As is well-established,

> "[w]hen this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard."  Syl., *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).  However, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syl. Pt. 1, *Chrystal R. M. v. Charlie A. L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).  With these standards in mind, we proceed to the parties' arguments.

## III.  DISCUSSION

This case presents an issue of first impression requiring statutory interpretation:  whether West Virginia Code § 49-4-604(c)(6) permits a court to terminate

---

[9] Although the dispositional hearing was conducted on February 25, 2019, the order terminating petitioner's parental rights was not entered until January 27, 2020.

6

the parental rights[10] of an abusive or neglectful parent as to a child who dies during the pendency of the abuse and neglect proceedings.[11]

Petitioner contends that most of the dispositional alternatives contained in West Virginia Code § 49-4-604(c) are phrased in such a manner as to effectively preclude their application where a child who is the subject of the petition is deceased. Further,

---

[10] West Virginia Code § 49-4-604(c)(6) refers to "parental, custodial and guardianship rights." For ease of reference, we will refer to these rights collectively as "parental rights" herein but note that our discussion and holding herein is equally applicable irrespective of which of these particular rights may be in issue.

[11] We wish to make clear from the outset that our discussion and holding herein does not purport to affect situations where a child who is subject of an abuse and neglect petition dies during the pendency thereof, but there are additional children in the home and/or subjects of the petition. In that event, the death of a child who is but one of the children named in a petition does not serve to abate the matter altogether; findings as to the abuse or neglect of the deceased child remain relevant to an evaluation of whether the remaining children likewise satisfy the definition of an abused or neglected child. *See* Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995) ("Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code, 49-1-3(a) (1994).").

Even more importantly, if a parent is properly adjudicated of abuse and/or neglect in regard to several children and one of them subsequently dies, a parent's inability to remedy those conditions of abuse and neglect can certainly serve as the basis for the termination of the parent's parental rights to the remaining children upon evidence that those children's health or welfare is harmed or threatened, the death of any one child notwithstanding. 194 W. Va. at 452, 460 S.E.2d at 698 (explaining that, although no "blanket rule" requires the termination of rights to all children found to be abused by virtue of residing in the same home as a child who suffered physical or sexual abuse, such rights may be terminated when the DHHR "present[s] clear and convincing evidence that the child's 'health or welfare is harmed or threatened'"). Nonetheless, this case concerns only a situation where the lone child who is the subject of a petition dies prior to the dispositional phase of the proceedings.

7

petitioner asserts that the applicable statutory language includes a mandatory prerequisite to termination of parental rights: that termination must be necessary to the continued welfare of the child who is the subject of the petition. Petitioner asserts that a deceased child has no further "welfare" to be protected.

DHHR, on the other hand, relying almost exclusively on this Court's holding in *I.M.K.*, maintains that an abuse and neglect action may proceed to the dispositional phase and result in termination irrespective of the death of the child.[12] DHHR argues that the Court's rationale and holding in *I.M.K.* constitute a tacit endorsement of termination of a parent's rights to a deceased child, where appropriate, for the protection of other or future children. In *I.M.K.*, this Court held that an adjudicatory hearing may be held irrespective of the death of the subject child:

> When an infant child is born alive and becomes the subject of an abuse and neglect petition, but the child dies during the pendency of the abuse and neglect proceedings, the matter may proceed to an adjudicatory hearing, and the presiding circuit court may make findings of fact and conclusions of law as to whether the subject child is an abused and/or neglected child and whether the respondents are abusing and/or neglectful as contemplated by W. Va. Code § 49-4-601(i) (2015) (Repl. Vol. 2015).

240 W. Va. 679, 815 S.E.2d 490, syl. pt. 2, in part. DHHR highlights *I.M.K.*'s overarching rationale that abuse and neglect proceedings are for the purpose of identifying and

---

[12] The guardian ad litem adopts, in large part, DHHR's arguments but draws additional focus to petitioner's failure of her improvement period, discussed more fully *infra*. *See* n.15.

8

documenting abuse and/or neglect to prevent recurrence in the future and argues that disposition even more affirmatively accomplishes that goal than adjudication, particularly where termination of parental rights is appropriate.

While we recognize the temptation to summarily make what DHHR contends is a sound and logical extension of *I.M.K.* to resolve this issue, we may not do so without examining the statutory language and intent of the dispositional statute, which stands separate and distinct from the adjudicatory statute. As this Court has recognized, "[t]he adjudicatory hearing required by § 49-4-601 and the disposition hearing required by § 49-4-604 create a 'two-stage process [that] is well-recognized in our case law,'" each of which "has a separate purpose." *In re A.P.-1*, 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019) (footnote omitted) (quoting *In re K.H.*, No. 18-0282, 2018 WL 6016722, at *4-6 (W. Va. November 16, 2018) (memorandum decision)). Accordingly, we begin with an examination of the dispositional statute's language.

West Virginia Code § 49-4-604(c) provides the various dispositional alternatives available to the court in the final phase of an abuse and neglect proceeding. The circuit court in the instant case ordered termination of parental rights pursuant to subsection (c)(6):

> (c) *Disposition decisions*. The court shall give precedence to dispositions in the following sequence:
>
> (1) Dismiss the petition;

(2) Refer the child, the abusing parent, the battered parent or other family members to a community agency for needed assistance and dismiss the petition;

(3) Return the child to his or her own home under supervision of the department;

(4) Order terms of supervision calculated to assist the child and any abusing parent or battered parent or parents or custodian which prescribe the manner of supervision and care of the child and which are within the ability of any parent or parents or custodian to perform;

(5) Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court. . . .

(6) Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent . . . .

Petitioner maintains that the references in each of the dispositional alternatives—other than those resulting in dismissal—to "*the* child" presume and therefore require the continued involvement and presence of the child who is the subject of the petition. Accordingly, petitioner argues that none of those dispositions may obtain where "the child" who is the subject of the petition is deceased. Petitioner contrasts this phrasing with alternative wording which, had the Legislature chosen to use it, could be construed as casting a wide enough net to encompass and consider children who are not named in the petition or who are not yet born, such as "*a* child" or "children."

10

Petitioner notes that similar language is utilized in West Virginia Code § 49-4-604(d) describing circumstances in which there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected," a finding necessary to terminate parental rights. [13]  Subsection 604(d) provides a non-exclusive list of circumstances in which that finding may be made, most of which likewise evaluate the parent's capacity to solve the problems of abuse or neglect relative to "*the* child."[14]  When

---

[13] We observe further that "*the* child" is referenced in this manner not only in the dispositional alternatives and the circumstances constituting a parent's "inadequate capacity" but elsewhere throughout the statutory scheme. *See also* W. Va. Code §§ 49-1-105(b)(2) (2015) (recognizing that Child Welfare Act "[s]erve[s] the mental and physical welfare of *the child*" (emphasis added)); W. Va. Code § 49-2-801(1) (2015) (observing purpose "[t]o protect the best interests of *the child*" (emphasis added)).

[14] As provided in West Virginia Code § 49-4-604(c)(6), termination of parental rights must be supported by both a finding that there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" and a finding that termination is "necessary for the welfare of the child." West Virginia Code § 49-4-604(d) then further defines "[n]o reasonable likelihood . . ." as existing where "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." That "inadequate capacity" is then described as existing under the following circumstances:

> (1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

> (2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to *the child's return to their care, custody and control*;

(continued . . .)

11

these circumstances are established, "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children . . . may be employed without the use of intervening less restrictive alternatives[.]" Syl. Pt. 2, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

We agree with petitioner that the Legislature's use of the definite article "the" in referring to "the child" throughout the dispositional alternatives in subsection 604(c)

---

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies *designed to reduce or prevent the abuse or neglect of the child*, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child;

(4) The abusing parent or parents have *abandoned the child;*

(5) The *abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child*, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child; and

(6) The battered parent's parenting skills have been seriously impaired and the person has willfully refused or is presently unwilling or unable to cooperate in the development of a reasonable treatment plan, or has not adequately responded to or followed through with the recommended and appropriate treatment plan.

*Id*. (emphasis added).

12

was designed to refer to the child or children who are the subject of the petition.  As explained by one court:

> Like all the other words in a statute, the articles count. "If possible, the court must give effect to *every word*, clause, and sentence; it must not read a statute so as to render *any part* inoperative, superfluous, or insignificant * * *." (Emphases added.)  The articles in a statutory text—the definite articles and the indefinite articles—should not be overlooked or discounted. They are meaningful. We should treat them as chosen by design. Regardless of whether a definite article modifies a singular noun or a plural noun ("the victim" or "the victims"), the definite article has a *particularizing* effect.

*People v. Hayden*, 127 N.E.3d 823, 842 (Ill. App. Ct. 2018) (citations omitted); *see also BP Am. Prod. Co. v. Madsen*, 53 P.3d 1088, 1092 (Wyo. 2002) ("[I]n construing statutes, the definite article 'the' is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").  As such, we find that the references in the dispositional alternatives to "the child" means the child or children who are the subject of the petition.

In view of that construction, we find that as to the dispositional alternatives contained in West Virginia Code § 49-4-604(c), the statute's language indicates that anything less than dismissal of the petition implicates the continued involvement, presence, and welfare of the child who is the subject of the petition.   Disposition one is outright dismissal of the petition.  *Id*. § 49-4-604(c)(1).  Disposition two, permitting the court to refer the child or parent to an agency for assistance, does not necessarily require application to "the child."   However, this dispositional alternative also requires commensurate dismissal of the petition:  "Refer the child, the abusing parent, the battered parent or other

13

family members to a community agency for needed assistance and dismiss the petition[.]" *Id*. § 49-4-604(c)(2).

The remaining dispositional alternatives in West Virginia Code §§ 49-4-604(c)(3) through (6) referencing "the child" are all plainly designed to address the custodial situation of the subject child and the supervision and caretaking necessary for his or her welfare. Subsections (c)(3) and (c)(4) enhance the level of supervision to parent and child, providing alternatives of "[r]eturn[ing] *the child* to his or her own home under supervision of the department[,]" or ordering "terms of supervision calculated to assist *the child* and any abusing parent[.]" *Id*. (emphasis added). Dispositional alternative (c)(5) escalates the resolution, invoking removal of the child from the home and "commit[ing] *the child* temporarily to the . . . custody . . . of the [DHHR] . . . or a suitable person who may be appointed guardian[.]" *Id*. (emphasis added).

The "most drastic" dispositional alternative—termination under subsection (c)(6)—allows for termination of parental, custodial or guardianship rights where there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and "when necessary for the welfare of *the child*[.]" *Id*. § 49-4-604(c)(6) (emphasis added). This dispositional alternative, in particular, very specifically directs the court to consider the individual needs of the child who is the subject of the petition. West Virginia Code §§ 49-4-604(c)(6)(A) and (B) requires a court ordering termination to consider "[t]he child's need for continuity of care and caretakers[] [and] []

14

[t]he amount of time required for the child to be integrated into a stable and permanent home environment[.]" These references make clear that the dispositional alternatives not resulting in dismissal of the petition presume that the child who is the subject of the petition and his or her custodial and living situation remain extant at the time of disposition.

Having determined that the dispositional alternatives contained in West Virginia Code § 49-4-604(c) contemplate and refer specifically to the child who is the subject of the petition, petitioner draws focus to subsection 604(c)(6)'s requirement that termination of parental rights may be ordered only upon a finding that 1) there is no reasonable likelihood the conditions of neglect or abuse can be substantially corrected *and* 2) the termination is "necessary for the welfare of *the child*." *Id*. § 49-4-604(c)(6). Petitioner contends that because of A. P.'s death, "[t]here was no child named in the petition whose welfare could be served by the termination of [petitioner's] parental rights[.]" We agree.

The two distinct requirements set forth in West Virginia Code § 49-4-604(c)(6) for termination of parental rights must each be afforded their proper significance. The prerequisite that there must first be "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" speaks to *the parent's* current situation, conduct, and/or abilities relative to his or her caretaking of the child. *Id*. In contrast, the "and[] when necessary for the welfare of the child" requirement concerns itself with the

15

particular needs of *the child* as pertains to his or her physical and emotional well-being. *Id.* (emphasis added).

This latter requirement—through its pre-condition of abject necessity—duly recognizes the heightened burden which must be satisfied to terminate, with finality, a parent's fundamental right to custody of his or her child. "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions." Syl. Pt. 1, *In re Willis,* 157 W. Va. 225, 207 S.E.2d 129 (1973). *See also Taylor v. Taylor*, 47 S.W.3d 377, 386 (Mo. Ct. App. 2001) (recognizing that "termination of parental rights is an 'awesome power' exercised by the State and that strict and literal compliance with the statutory authority is necessary."). This language cannot simply be cast aside in the interest of the more elaborately described "no reasonable likelihood" factor, nor *presumed* from the presence of that factor.[15] It is well-

---

[15] This is, in effect, the argument advanced by the guardian ad litem. Parting ways with the DHHR's primary argument, the guardian ad litem insists that petitioner in this particular case remains subject to termination of her parental rights due to her failure to comply with her improvement period. *See In re Kristin Y.*, 227 W. Va. 558, 571, 712 S.E.2d 55, 68 (2011) ("A parent's participation in an improvement period is a clear indicator of the parent's future potential for success and willingness to make the necessary changes to become a fit and suitable parent. . . . [S]poradic cooperation with service providers, [] inability to complete a course of parent education . . . and [] failure to fully cooperate with the Department, provide sufficient grounds for the finding that the conditions of neglect or abuse cannot substantially be corrected."). The guardian ad litem notes that petitioner herself moved for the improvement period—albeit prior to A. P.'s (continued . . .)

16

established that "courts are not to eliminate through judicial interpretation words [in a statute] that were purposely included[.]"  Syl. Pt. 11, *Brooke B. v. Ray,* 230 W.Va. 355, 738 S.E.2d 21 (2013).

DHHR suggests, however, that a child's "welfare" as the term is used in subsection 604(c)(6), is tantamount to his "best interests," which do not abate upon his or her death.  In support, DHHR contends that *I.M.K.* implicitly found that a child's "best interests" effectively survives his or her death by holding that a guardian ad litem must continue to represent and advocate for a deceased child until the proceedings are concluded.  *See* 240 W. Va. 629, 815 S.E.2d 490, syl. pt. 4.  The Court found that,

death—and in her adjudicatory stipulation agreed to psychological/drug/alcohol evaluations and counseling, drug screening, individual and family therapy, parenting and adult life skills classes, and cooperation with service providers, among other things. Indeed, we note further that the order granting the improvement period—ruled upon and entered *after* A. P.'s death—reflects that the parties, including petitioner, "were *in agreement* for [petitioner] to be granted a post-adjudicatory improvement period not to exceed six (6) months." (emphasis added).  Despite requesting and apparently agreeing to the improvement period even after A. P.'s death, it is undisputed that petitioner then failed to comply or participate in any respect.

Nevertheless, this failure on petitioner's part merely goes to establish that the "no reasonable likelihood" prerequisite may well have been met in this case.  As indicated *supra*, the "[n]o reasonable likelihood" factor is established where the parent demonstrates an "inadequate capacity" to solve the problems of abuse or neglect.  *See* W. Va. Code § 49-4-604(d).  That "inadequate capacity" is then described as existing in a variety of circumstances including, as pertains to this specific case, where the parent has "willfully refused or [is] presently unwilling to cooperate in the development of a reasonable family case plan" and/or has not "followed through the recommended and appropriate treatment" and/or "other rehabilitative efforts[.]"  *Id.* §§ 49-4-604(d)(1)-(3).  However, the "no reasonable likelihood" factor is but one of two prerequisites to termination, the second being that termination is necessary for the welfare of the child.  *See* discussion *infra*.

17

irrespective of a child's death, "it is essential that a guardian ad litem participate in *all* the various stages of the abuse and neglect proceedings to accomplish this goal of advocacy and protection of the child's best interests." *Id*. at 691, 815 S.E.2d at 502. DHHR suggests that a child's "welfare" and "best interests" are synonymous; if a child's "best interests" are entitled to advocacy after his or her death, certainly a court can consider a child's "welfare" despite his or her death. As tangential support for this position, DHHR offers a handful of extra-jurisdictional cases where courts have addressed a parent's ability to bring or benefit from a wrongful death action where the parent is alleged to have engaged in conduct equivalent to abuse and/or neglect.[16]

---

[16] Some courts have informally utilized traditional termination bases to construe their wrongful death statutes as precluding standing to bring wrongful death actions. *See, e.g.*, *Abraham v. Black*, 816 S.E.2d 351 (Ga. Ct. App. 2018) (utilizing parental termination statute to construe wrongful death statute and determine who had standing to bring wrongful death suit); *Perry v. Williams*, 70 P.3d 1283, 1286 (N. M. Ct. App. 2003) (declining to address "posthumous . . . termination of parental rights" but permitting use of abandonment and non-support bases in neglect statute to construe wrongful death statute and determine standing). Other courts have used the specter of "collateral consequences" of an abuse and neglect finding to permit challenges to those findings posthumously despite having been rendered technically moot. *See, e.g., In re Smith*, 919 N.W.2d 427, 434 (Mich. Ct. App. 2018) (holding appeal not rendered moot "because the trial court's termination of respondent's parental rights may have collateral legal consequences for respondent."); *In re C. G.*, 410 P.3d 596, 603 (Colo. App. 2015) (finding abuse and neglect issues not moot because of "collateral consequences" including civil remedies arising from the death); *In re E.C.G.*, 345 N.W.2d 138 (Iowa 1984) (finding termination of parental rights not rendered moot where estate and wrongful death issues were present).

In none of these cases, however, were a parent's rights to his or her deceased child terminated posthumously. More importantly, none of these cases addresses whether statutory language such as that employed in West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights to a deceased child. Only one of the cases cited by DHHR (continued . . .)

18

We believe that it is commonly understood that the terms "welfare" and "best interests" have significantly different connotations. Black's Law Dictionary defines "welfare" as "[w]ell-being in any respect; prosperity." WELFARE, Black's Law Dictionary (11th ed. 2019); *see also Commonwealth v. Lynn*, 114 A.3d 796, 823 (Pa. 2015) ("By requiring supervision of the child's *welfare* rather than of the child, the statute endeavors to safe-guard the emotional, psychological, and physical well-being of children." (emphasis added)). A child's "welfare," therefore, concerns his or her personal well-being.[17] On the other hand, his or her "interests" or "best interests" are considerably

---

even obliquely addresses the issue squarely presented here, wherein a court terminated a mother's parental rights to prevent her from bringing a wrongful death action against the state for her child's murder after she abandoned him. *See N. J. Div. of Youth & Fam. Servs. v. M.W.*, 942 A.2d 1, 17 (N. J. Super. Ct. App. Div. 2007) (permitting posthumous termination on narrow basis that "court may exercise equitable powers in unusual circumstances to grant posthumous relief in order to prevent an inequity.").

[17] As such, a child's welfare necessarily implicates his or her need for and entitlement to permanency. *See In re Isaiah A.*, 228 W. Va. 176, 182, 718 S.E.2d 775, 781 (2010) ("[T]he precedent of this Court supports the proposition that children are entitled to permanency to the greatest degree possible."); Syl. Pt. 6, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011) ("The eighteen-month period provided in Rule 43 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.").

In that regard, the "and when necessary for the welfare" language of West Virginia Code § 49-4-604(c)(6) does not allow a court to make a dispositional election which jeopardizes a child's right to that permanency. *See In re I. A.*, No. 19-0152, 2019 WL 2451150, at *3 (W. Va. June 12, 2019) (memorandum decision) (rejecting argument that disposition under subsection (c)(5) "'provides the same protection to the children as termination'" due to its temporary nature); *In re V. R.*, No. 17-0933, 2018 WL 1255026 (W. Va. Mar. 12, 2018) (memorandum decision) (rejecting mother's demand for (continued . . .)

broader and may implicate his or her stake or position in a particular matter which best serves his or her overall interests. In that vein, a guardian ad litem's continued advocacy for a child in abuse and neglect proceedings—even after his or her death—speaks more to the child's entitlement to advocacy for the child's position or stake as established in the matter, rather than being limited to his or her personal well-being. We simply find no reasonable basis upon which to conclude that a child's individual "welfare" is a matter that can any longer be affected by the termination of an abusive or neglectful parent's rights after the child's death. His or her individual "welfare" is, sadly, no longer a present and practicable concern.

These conclusions notwithstanding, we find it appropriate to further evaluate the purpose of the dispositional statutes to ensure that our reading of the statutory language comports with the Legislature's intent. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature[;]" therefore, we will examine the purpose of an abuse and neglect disposition in greater detail. Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). DHHR forcefully contends that adjudication without disposition is "meaningless." It argues that, irrespective of a technical reading of the statute, it is vitally necessary to the protection of other children

___

disposition under subsection (c)(5) where statutory criteria for termination were met); *Kristin Y.*, 227 W. Va. at 571, 712 S.E.2d at 68 (reversing disposition under subsection (c)(5) finding that it "deprives the children of the permanency they need, want, deserve and are entitled to have."); *Cecil T.*, 228 W. Va. at 99, 717 S.E.2d at 883 (reversing disposition under subsection (c)(5) finding that for "children victimized by abuse and neglect[,] . . . their need for permanency in a secure environment is paramount.").

20

who are not named in the petition or any future children that a properly founded termination of parental rights not abate with a child's death. DHHR insists that other living or future children benefit from a termination of parental rights by establishing "aggravated circumstances" for any future abuse and neglect proceedings involving the parent. As provided by our statutory scheme, a prior termination of parental rights qualifies as "aggravated circumstances,"[18] the significance of which is that 1) it is to be considered by the court for purposes of temporary custody of children who become the subject of a future petition;[19] and 2) it eliminates the requirement of reunification with regard to those children in any future petition.[20]

---

[18] Technically, a prior termination does not constitute "aggravated circumstances," but rather is listed alongside other specifically delineated aggravated circumstances (i.e., abandonment, torture, chronic abuse and sexual abuse) as an equal basis upon which to find that reunification efforts are unnecessary. It is, however, commonly referred to as an aggravated circumstance, as does DHHR herein.

[19] W. Va. Code § 49-4-602(d)(3) (2015) provides:

> (d) *Situations when reasonable efforts to preserve the family are not required*. -- For purposes of the court's consideration of temporary custody pursuant to subsection (a), (b), or (c) of this section, the department is not required to make reasonable efforts to preserve the family if the court determines:
>
> * * *
>
> (3) The parental rights of the parent to another child have been terminated involuntarily.

[20] W. Va. Code § 49-4-604(c)(7)(C) provides:

(continued . . .)

As indicated previously, the adjudicatory phase and hearing and the dispositional phase and hearing each has a "separate purpose": "The first phase culminates in an adjudication of abuse and/or neglect. [*See* section 49-4-601]. The second phase is a dispositional one, *undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. [See* section 49-4-604]." *A.P.-1*, 241 W. Va. at 693, 827 S.E.2d at 835 (footnotes omitted) (quoting *K.H.*, 2018 WL 6016722, at *5-6) (emphasis added). As the language of the dispositional alternatives makes clear, discussed *supra*, the focus of disposition is the conduct or abilities of the parent and what measures they necessitate for purposes of the subject child's living situation and caretaking going forward.[21] A determination of whether the child will be adequately protected and cared

---

> For purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines:
>
> * * *
>
> (C) The parental rights of the parent to another child have been terminated involuntarily[.]

*See also* W. Va. Code § 49-4-605(a)(3) (2018) ("[T]he department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights . . . (3) If a court has determined . . . the parental rights of the parent to another child have been terminated involuntarily[.]").

[21] Emphasis on the temporal purpose of disposition is fully consonant with *I.M.K.*'s treatment of the adjudicatory statutory language. With regard to the adjudicatory phase, the *I.M.K.* Court placed particular emphasis on the guidance provided in West Virginia Code § 49-4-601(i) which states that adjudicatory findings "'must be based upon conditions existing *at the time of the filing of the petition.*'" *Id*. at 686, 815 S.E.2d at 497 (emphasis added). Accordingly, the Court reasoned:
(continued . . .)

22

for with simple supervision and/or services or requires removal from the home is the entire objective of disposition.

Moreover, DHHR's position that disposition is necessary to the protection of other living children who are not the subject of the petition or any future children is undermined by the very case upon which it relies.[22] *I.M.K.* makes clear that it is *adjudication* which primarily serves the "function of . . . identify[ing] and document[ing] instances of abuse and neglect to ensure the safety of additional children in the household." 240 W. Va. at 689, 815 S.E.2d at 500. Further, the *I.M.K.* Court found that adjudication fully lends itself to the protection of any future children:

> Where, as here, there is only one child who is the subject of the abuse and neglect proceedings and where, as here, there are no other children in the home, an adjudication still is vital because it serves the recognized purposes of identifying, documenting, and "remedying conditions" that could, if left unchecked, potentially harm future children in the household.

> The fact that the subject child has since died, presumably as a result of the severity of the injuries inflicted by the alleged abuse and/or neglect, though tragic, does not foreclose the circuit court's inquiry because the conditions alleged to exist at the time of the petition's filing are the determinative factors—not those that may later arise.

*Id*. at 687, 815 S.E.2d at 498 (footnote omitted).

[22] We observe further that in stark contrast to its position herein, DHHR's position in *I.M.K.* was that a guardian ad litem was unnecessary after a child's death "because the child would not be impacted by any of the dispositional alternatives for the parents and permanency for the child is no longer at issue." 240 W. Va. at 690, 815 S.E.2d at 501.

*Id.* (footnote omitted). Accordingly, *I.M.K.* belies DHHR's position that only disposition can adequately protect other living or future children, inasmuch as the Court found that adjudication itself acts to "ensure the safety and well-being of both current and future children of the respondent parties." *Id.* In fact, *I.M.K.* goes so far as to state that, despite the continued vitality of adjudication, "final disposition of the abuse and neglect proceeding and establishment of permanency for the subject child" is necessarily "hampered" by a child's death. *Id.* at 688, 815 S.E.2d at 499 (footnote omitted).

Simply put, West Virginia Code § 49-4-604(c) has nothing to offer other living or future children as they are not within the control of the court and therefore evade the effects of application of any of the dispositional alternatives. *Accord In re L.W.*, 861 N.E.2d 546, 551 (Ohio Ct. App. 2006) (finding "'as a matter of reason and common sense,' the action abated with L.W.'s death, as circumstance has effectively accomplished the primary objectives of the [action]."). DHHR's focus on the creation of "aggravated circumstances" for any future abuse and neglect proceedings is simply too speculative to summarily enlarge the scope of disposition's reach. There is nothing to suggest that petitioner will have future children or that those children will become the subject of abuse and neglect proceedings. *See L. W.*, 861 N.E.2d at 552 (finding father's arguments to avoid action's mootness due to subject child's death were "entirely speculative. There is no indication that appellant will ever be subject to a neglect or dependency action with regard to his surviving child[.]"); *In re C. R.*, 95 N.Y.S.3d 720, 723 (N.Y. Fam. Ct. 2018) (finding abuse and neglect petition mooted by child's death and "declin[ing] to make a

24

determination based on a possible future event" such as "if the mother[] became pregnant or accepted jobs caring for children").

Insofar as petitioner's other child, A. V., is concerned, at no time did DHHR seek to make her part of the subject proceedings given that her health and/or safety was not jeopardized by petitioner's conduct in view of the child's guardianship. *See* W. Va. Code § 49-4-601 (2019) (requiring abuse and neglect findings to be "based upon conditions existing at the time of the filing of the petition"). This will presumably continue to be the case unless and until modification of her particular disposition is sought, at which point, if relevant, certainly petitioner's adjudication would constitute competent evidence to be considered for any such purpose. *See id*. § 49-4-606(a) (2015) ("Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four of this article and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests."). Similarly, while the instant matter may not satisfy the statutory preconditions for an "aggravated circumstances" allegation in any future proceedings, it is nonetheless competent evidence to be considered by the court in the course of such proceedings as appropriate and permitted by law.

Accordingly, we hold that West Virginia Code § 49-4-604(c)(6) does not permit the termination of parental, guardianship, or custodial rights to a child who is

25

deceased at the time of disposition. *Accord LePori v. Welch,* 93 So. 3d 66, 68 (Miss. Ct. App. 2012) (finding that father's rights to child could not be posthumously terminated because purpose of termination is to allow for child to be adopted and stating "it logically follows the statute only addresses circumstances when the child is still living."); *L.W.*, 861 N.E.2d at 551 ("L.W.'s death clearly extinguished the instant action. The state's primary focus in a dependency action is on the child's condition and environment."); *Matter of Stephanie W. W.*, 623 N.Y.S.2d 404, 405 (N. Y. App. Div. 1995) ("In view of the underlying purpose of Family Court Act article 10 to 'protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being' we conclude that a neglect petition may not be brought on behalf of a deceased child[.]" (citations omitted)); *Crosby v. Corley*, 528 So. 2d 1141, 1144 (Ala. 1988) (finding termination of parental rights under Child Protection Act "simply not applicable in postmortem situations").[23]

Finally, we underscore that our conclusion that the death of the only child named in an abuse and neglect petition requires its post-adjudicatory dismissal does not imply that the abusive and/or neglectful conduct is beyond the concern of the court or that

---

[23] We are careful to note that there is insufficient evidence in this particular case to conclude that A. P.'s death was *caused by* the conditions of neglect to which petitioner stipulated, although there is an uninterrupted chain of events from the incident which gave rise to the petition and the child's death. However, nothing in this opinion should be read as insinuating that such a causal connection exists. Regardless, however, we clarify that our reading of the statutory language leaves no room for distinction between a child whose death is caused by abuse and/or neglect and a child whose death is unrelated to such proceedings.

the proceedings were for naught. As previously noted, West Virginia Code § 49-4-604(c)(2) expressly permits the court to refer a parent or other family member "to a community agency for needed assistance" concomitantly with dismissal of the petition. We can think of no situation better suited to the dispositional alternative provided in subsection 604(c)(2) than that demonstrated in the instant case—where dismissal of the petition is statutorily required but a parent most clearly could still benefit from assistance, services, and/or other intervention.

## IV. CONCLUSION

Therefore, for the reasons set forth herein, we reverse the January 27, 2020, order of the Circuit Court of Harrison County and remand for entry of an order consistent with this opinion.

Reversed and remanded with directions.