IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-602

_____

FILED
November 9, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* Z.S.-1 and Z.S.-2

Appeal from the Circuit Court of Wyoming County
The Honorable James J. Rowe, Judge
Juvenile Action Nos. 21-JA-5 and 21-JA-45

VACATED AND REMANDED

_____

AND

_____

No. 22-0478

_____

*IN RE* Z.S.-1 and Z.S.-2

_____

Appeal from the Circuit Court of Wyoming County
The Honorable James J. Rowe, Judge
Juvenile Action Nos. 21-JA-5 and 21-JA-45

VACATED AND REMANDED

_____

Submitted: September 6, 2023
Filed: November 9, 2023

Thomas H. Evans, III, Esq.
Thomas Hanna Evans, PLLC
Oceana, West Virginia
Attorney for the Petitioner
Father, S.C., in Case No. 22-602

Patrick Morrisey, Esq.
Attorney General
Brittany Ryers-Hindbaugh, Esq.
Assistant Attorney General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Attorneys for the Respondent,
West Virginia Department of Health
and Human Resources

Karen S. Hatfield, Esq.
Law Office of
Karen S. Hatfield, PLLC
Gilbert, West Virginia
Attorney for the Petitioner
Mother, S.S.-C., in Case No. 22-0478

Lela Walker, Esq.
Lela Walker Attorney at Law, PLLC
Oceana, West Virginia
Guardian ad Litem for the
Minor Children, Z.S.-1 and Z.S.-2

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.  "For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition." Syllabus point 8, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

2.  "In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code [§ 49-4-604(c)], it must hold a hearing under W. Va. Code [§ 49-4-601(i)], and determine 'whether [the] child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syllabus point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

3.  Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires a stipulated adjudication to include both "(1) [a]greed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition" and "(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition."

4. "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syllabus point 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

**Bunn, Justice:**

Two cases involving the same minor children, Z.S.-1[1] and Z.S.-2, have been consolidated for our consideration on appeal. In case number 22-602, Father, S.C., appeals the dispositional order entered by the Circuit Court of Wyoming County on May 31, 2022, terminating his parental rights to Z.S.-1 and Z.S.-2.[2] In case number 22-0478, Mother, S.S.-C., appeals the same order which also terminated her parental rights to both of the children, Z.S.-1 and Z.S.-2.[3] On appeal, the parents contend that the circuit court erred by terminating their respective parental rights. Both the West Virginia Department of Health and Human Resources ("the DHHR") and the children's guardian ad litem support the circuit court's order terminating the parents' parental rights.

Our review of the record of the children's abuse and neglect cases reveals numerous procedural errors that substantially affected the integrity of the underlying

---

[1] In cases involving sensitive facts, like abuse and neglect matters, we use initials, rather than full names, to refer to the parties. *See, e.g.*, *In re K.L.*, 241 W. Va. 546, 548 n.1, 826 S.E.2d 671, 673 n.1 (2019); *In re S.H.*, 237 W. Va. 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children). Because the two children share the same initials, we have added numbers to their initials that correspond with their birth order.

[2] Father is the biological father of Z.S.-2. He is also the stepfather of Z.S.-1, from whose abuse and neglect case Father was initially dismissed by the circuit court; however, Father was reinstated as a respondent parent regarding Z.S.-1 when the DHHR filed its amended abuse and neglect petition adding Z.S.-2 to the underlying proceedings. *See* Section I and note 16, *infra*.

[3] Mother is the biological mother of both children.

1

proceedings. These errors began at the inception of the proceedings, affected the adjudicatory stage of the cases, and continued through the court's final dispositional order that is the subject of these consolidated appeals. Therefore, to correct these errors, we vacate the circuit court's May 31, 2022 order terminating the parents' parental rights, as well as the court's adjudicatory orders, and remand to the circuit court for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

These consolidated cases began as an abuse and neglect proceeding against Mother; S.B., the biological father of Z.S.-1;[4] and Father, the stepfather of Z.S.-1.[5] In March 2021, when Z.S.-1 was approximately eight months old, Mother took Z.S.-1 to the emergency room because he had a fever and severe bruising on his forehead and cheek. Both Mother and Father had been with the child the previous day, and it appears that the child was in their sole care at the time of his injuries. Mother claimed she believed the child's bruising was an allergic reaction either to a recent antibiotic or to food the child had eaten in a restaurant the day before. The emergency room physician ruled out allergic reaction as a possible cause of the child's injuries. Contemporaneous photographs of Z.S.-1 show bruising on the child's forehead. Due to the nature of the child's injuries, the

---

[4] The circuit court also terminated S.B.'s parental rights to Z.S.-1; however, S.B. did not appeal from this ruling, and, therefore, is not a party to the instant proceeding.

[5] Mother and Father were married during the events at issue in these appeals.

emergency room physician suspected abuse and notified the DHHR. During the DHHR's ensuing investigation, Father acknowledged that the child "deserve[d] better," but that Mother was a "good mom"; Father did not provide any other information about the cause of the child's injuries. Mother, who was sixteen years old[6] at the time of these events, likewise did not explain how the child had been injured. Also during this time, Mother was pregnant with child Z.S.-2. The DHHR filed a child abuse and neglect petition and sought the emergency removal of Z.S.-1 from Mother's and Father's care.

The record contains discrepancies between what actually occurred at Mother's two adjudicatory hearings and the court's memorialization of its rulings from those hearings in its adjudicatory orders. During Mother's first adjudicatory hearing, in July 2021, Mother was prepared to stipulate that Z.S.-1 suffered injuries while in the custody of Mother but that she did not know how he had been injured.[7] However, based on a review of the hearing transcript, due to the DHHR's newly disclosed video evidence,[8]

---

[6] Mother also had only an eighth-grade education. During the proceedings below, the circuit court appointed both counsel and a guardian ad litem to represent Mother during the abuse and neglect case; Mother's guardian ad litem was different than the guardian ad litem appointed for the children. On appeal, Mother is represented only by counsel.

[7] The full text of Mother's stipulation is set forth in Section III.A, *infra*.

[8] While the referenced video is not included in the appendix record, the parties represented during the hearing that the video showed a dispute that Mother had with Father while they were in their car. It further appears that Z.S.-1 was present in the car during this incident.

Mother did not complete her stipulation, and the circuit court did not accept it. Nevertheless, the order from this hearing adjudicates Z.S.-1 as a neglected[9] child and finds that Mother neglected Z.S.-1 based upon its purported acceptance of her stipulation. Other than referring to Mother's stipulation and the "conditions existing at the time of the filing of the Petition," the order does not contain any facts to support its findings that Z.S.-1 was a neglected child and that Mother was responsible for Z.S.-1's neglect.

The circuit court then held a second adjudicatory hearing in August 2021 where Mother tendered her stipulation, and the circuit court accepted it. However, neither of these actions are reflected in the circuit court's order from that hearing. Instead the order notes only that the court continued the adjudicatory hearing for Z.S.-1's biological father and dismissed Father from Z.S.-1's abuse and neglect proceeding because he was not the child's biological father, and, thus, he claimed he did not have parental rights to this child that could be terminated.[10]

---

[9] The circuit court adjudicated Mother as to "neglect" based upon her stipulation but inexplicably terminated her parental rights based upon "abuse" at disposition. *See* Section I, *infra*. "Abuse" and "neglect" are not interchangeable terms; each word has a distinctive statutory definition and specific meaning. *See generally* W. Va. § 49-1-201.

[10] As will be discussed more fully in footnote 16, *infra*, this conclusion is incorrect insofar as Father was married to Mother and had custodial and guardianship rights to Z.S.-1 as the child's stepfather.

Following Z.S.-2's birth at the end of August 2021, the DHHR sought his emergency removal and amended the petition to also allege that Z.S.-2 was an abused and/or neglected child due to Z.S.-1's injuries that led to the initial abuse and neglect petition regarding Z.S.-1; the amendments also added Father as a respondent parent because he is Z.S.-2's biological father. In response to the amended petition, Father entered, and the court accepted, a stipulation, similar to Mother's. Although Father's actual stipulation is not in the record, the circuit court recounted Father's stipulation in its order from Father's adjudicatory hearing: "the Respondent [Father] . . . stipulated to the fact that injuries occurred to the infant child, [Z.S.-1,] while in her [*sic*] care and does not know how they occurred." As with Mother's stipulation and the adjudicatory order accepting it, no other facts regarding Z.S.-1's injuries are included in the court's order finding Father neglected[11] Z.S.-1. Although the appendix records in the parents' appeals contain hearing transcripts and court orders accepting Mother's and Father's stipulations to the neglect of Z.S.-1, the record before this Court does not indicate that either parent was adjudicated as to child Z.S.-2.

The circuit court granted Mother's and Father's respective motions for post-adjudicatory improvement periods, and both parents claim to have successfully complied with the terms and services and to have visited with the children; the DHHR, the children's

---

[11] With respect to Father, the circuit court made the same inconsistent findings of "neglect" at the adjudicatory stage of the proceedings and "abuse" at the dispositional stage of the case. *See* note 9, *supra*.

guardian ad litem, and the circuit court were less complimentary of the parents' improvement period progress. Although Mother's appendix record contains documentation that indicates her visits with the children went well, testimony during the dispositional hearing suggests that Z.S.-1 is more bonded with his current caretaker than with Mother; nothing in Father's appendix record addresses his compliance with services.

By order entered May 31, 2022, the circuit court terminated Mother's and Father's parental rights to both children.[12] Although the order terminates Mother's parental rights to Z.S.-1, it does not include any factual allegations pertaining specifically to this child. In the portion of the court's order purporting to terminate Mother's and Father's parental rights to Z.S.-2, the court recited the circumstances of Z.S.-1's injuries. However, Z.S.-2 could not have been injured as the circuit court described because he was removed from his parents' custody at birth and neither resided with them nor was in their sole care. The court's order does not contain any findings of fact specifically describing the abuse and/or neglect of Z.S.-2.

The court's dispositional order references both parents' failure to protect Z.S.-2 by not timely reporting and acknowledging abuse, but it appears this portion of the order refers to the injuries Z.S.-1 sustained. The order further considers Mother's and

---

[12] The circuit court also terminated the parental rights of Z.S.-1's biological father in this order.

6

Father's "absolute silence with respect to how the abuse[13] occurred . . . [as] culpability" despite its earlier acceptance of both parents' stipulations wherein they admitted that Z.S.-1's injuries constituted neglect but stated that they did not know how the child's injuries had occurred. Ultimately, the circuit court's order terminated Mother's and Father's parental rights to Z.S.-1 and Z.S.-2. From this order, both parents appeal to this Court, and we consolidated their appeals for purposes of consideration and decision.

## II.

## STANDARD OF REVIEW

We review a circuit court's factual determinations and legal conclusions in an abuse and neglect case pursuant to the following well-established standard:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

---

[13] The circuit court's characterization of the child's injuries as "abuse" at disposition is inconsistent with its earlier acceptance of the parents' adjudicatory stipulations characterizing the child's injuries as "neglect." *See* notes 9 & 11, *supra*.

Syl. pt. 1, *In Int. of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

# III.

## DISCUSSION

Mother and Father contend that the circuit court erred by terminating their parental rights in its May 31, 2022 dispositional order.[14] Upon our review of the appendix records, we find it necessary to address several procedural errors that occurred at the adjudicatory stage in the underlying proceedings leading to the court's entry of the dispositional order on appeal in these cases.

The circuit court's jurisdiction to enter its dispositional order from which Mother and Father have appealed depends upon the proper adjudications of Z.S.-1 and Z.S.-2 as abused and/or neglected children and the adjudications of Mother and Father as abusive and/or neglectful parents. In child abuse and neglect cases, the adjudicatory process is a jurisdictional prerequisite. Without proper adjudications of each child identified in the petition as abused and/or neglected children and each of the parents named as respondents to the petition as abusing and/or neglectful parents, the circuit court cannot proceed to the dispositional phase of the proceedings. *See, e.g.*, *In re A.P.-1*, 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019) ("[O]ur statutes, cases, and rules instruct that a circuit

---

[14] Mother additionally assigns error to the circuit court's denial of her request for a post-dispositional improvement period. Because we find it necessary to vacate the circuit court's dispositional order and remand for further proceedings, we need not consider this alleged error. *See generally* Sections III.A and III.B, *infra*.

8

court may not terminate parental rights at a § 49-4-604 disposition hearing without first finding that the parent abused or neglected the child in question at a § 49-4-601 adjudicatory hearing." (footnote omitted)).

We first consider the statute governing the adjudicatory phase of an abuse and neglect proceeding. West Virginia Code § 49-4-601(i) directs as follows:

> **Findings of the court. –** Where relevant, the court shall consider the efforts of the department to remedy the alleged circumstances. At the conclusion of the adjudicatory hearing, the court *shall* make a determination based upon the evidence and *shall* make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*Id.* (last two emphases added). *See also* W. Va. R. P. Child Abuse & Neglect Proc. 24, 25, 26, & 27 (describing adjudicatory phase of child abuse and neglect proceedings). The Legislature's use of the word "shall" renders these directives mandatory. *See generally* Syl. pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). "This process of adjudication enables the presiding tribunal to identify what abuse and/or neglect the subject children have sustained and to implement procedures to help the parents remedy these conditions to prevent future incidences thereof[.]" *In re I.M.K.*, 240 W. Va. 679, 685, 815 S.E.2d 490, 496 (2018) (citations omitted).

The findings made during an adjudicatory hearing pertain to the conditions existing at the time the DHHR filed the abuse and neglect petition in that case. Thus,

> [f]or a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an "abused child" or a "neglected child" as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an "abused child" or a "neglected child" must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.

Syl. pt. 8, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022). Then, only after a court determines that there is clear and convincing evidence[15] that abuse and/or neglect has occurred, may the case proceed to the dispositional phase of the proceedings:

> [i]n a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code [§ 49-4-604(c)], it must hold a hearing under W. Va. Code [§ 49-4-601(i)], and determine "whether [the] child is abused or neglected." Such a finding is a prerequisite to further continuation of the case.

Syl. pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983). *Accord* Syl. pt. 3, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830. Without properly made findings of abuse and/or neglect at adjudication, a case cannot proceed to disposition. *See In re S.B.*, No. 22-686,

---

[15] *See* Syl. pt. 1, *In Int. of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) ("*W. Va. Code* [§ 49-4-601(i)] requires the State Department of [Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of [Health and Human Resources] is obligated to meet this burden.").

2023 WL 6144856, at *2 (W. Va. Sept. 20, 2023) (memorandum decision) ("[T]he court did not enter an adjudicatory order, and the record contains no evidence an adjudicatory hearing was ever held. Thus, the circuit court lacked jurisdiction to terminate petitioner's parental rights."). Therefore, we must determine whether the circuit court properly adjudicated the children and the parents involved in the underlying abuse and neglect proceedings before we proceed to consider the parties' assignments of error challenging the court's dispositional order.

### A. Child Z.S.-1: Adjudication by Stipulation

Mother and Father each entered stipulations that Z.S.-1 sustained physical injuries while in their sole care and stating that they did not know how the child had been injured.[16] The circuit court, in its orders memorializing these stipulations, found that by so

---

[16] During the underlying proceedings, Father was dismissed as a respondent from the abuse and neglect case upon the DHHR's initial petition identifying only Z.S.-1, his stepchild, as an abused and/or neglected child. The order granting Father's motion for dismissal from the case explained that Father was dismissed from Z.S.-1's abuse and neglect case "due to him not being a biological parent of the child." It is not clear from the record why, when Father was named as a respondent parent to the amended petition that the DHHR filed following Z.S.-2's birth, the circuit court added Father back into the case as to both children and accepted Father's stipulation as to Z.S.-1. We are concerned that the circuit court granted Father's motion to dismiss him from the abuse and neglect proceeding upon the DHHR's initial petition, because even though he was not Z.S.-1's biological parent, Father nevertheless was the child's stepparent and resided in the same house as the child at the time of the events alleged in the petition. The statute governing the contents of an abuse and neglect petition specifically requires that "[e]ach petition shall name as a party each parent, guardian, custodian, [*sic*] other person standing in loco parentis of or to the child allegedly neglected or abused and state with specificity whether each parent, guardian, custodian, or person standing in loco parentis is alleged to have abused or neglected the child." W. Va. Code § 49-4-601(b). As Z.S.-1's stepparent and caretaker, Father fell within this comprehensive category of individuals against whom

11

stipulating, the parents did not contest the court's finding that Z.S.-1 had been neglected.[17]

Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings permits a parent to enter a stipulation during the adjudicatory phase of the proceedings provided that it complies with the Rule's requirements. This Rule directs that a stipulation contain the following information:

> (a) *Required Information.* Any stipulated or uncontested adjudication *shall* include the following information:
>
> (1) Agreed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition; *and*
>
> (2) A statement of respondent's problems or deficiencies to be addressed at the final disposition.

W. Va. R. P. Child Abuse & Neglect Proc. 26(a) (last two emphases added). Thus, it is clear from the use of the words "required," "shall," and "and" that a stipulation to

---

allegations of child abuse and/or neglect were required to be filed. Likewise, Father had cognizable rights as the child's guardian and/or custodian that the circuit court could have terminated during the dispositional phase of the proceedings. *See* W. Va. Code § 49-4-604(c)(6) (providing for disposition of child abuse and neglect case by "terminat[ion of] the [respondent's] parental, custodial and guardianship rights" "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and . . . when necessary for the welfare of the child"). While the error attending Father's dismissal from Z.S.-1's case appears to have been remedied by Father's subsequent stipulation acknowledging Z.S.-1's injuries as re-alleged in the DHHR's amended petition adding Z.S.-2 to the proceedings, the fact that Father was erroneously dismissed from any abuse and neglect case involving a child for whom he was a caretaker and who was injured while in his care cannot be ignored.

[17] As will be discussed more fully in Section III.A, *infra*, in her "Stipulation in Abuse and Neglect Case" form, Mother did not specifically stipulate that Z.S.-1 was a neglected child, and the written document memorializing Father's stipulation is not included in his appendix record.

12

adjudication in an abuse and neglect case must contain *both* types of information specified. *See* Syl. pt. 2, *Casaccio v. Curtiss*, 228 W. Va. 156, 718 S.E.2d 506 (2011) ("Court rules are interpreted using the same principles and canons of construction that govern the interpretation of statutes."); Syl. pt. 3, in part, *State v. Mason*, 157 W. Va. 923, 205 S.E.2d 819 (1974) ("[W]here the language of a rule is clear and unambiguous, it should not be construed but applied according to its terms."). *See also* Syl. pt. 1, *Nelson*, 171 W. Va. 445, 300 S.E.2d 86 (recognizing that use of "shall" in a statute, "in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation"); *Ooten v. Faerber*, 181 W. Va. 592, 597, 383 S.E.2d 774, 779 (1989) ("'And' is a conjunctive, and the use of 'and' . . . clearly makes both conditions necessary[.]" (citation omitted)). Accordingly, consistent with this express language, we now hold that Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires a stipulated adjudication to include both "(1) [a]greed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition" and "(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition."

Including both of these elements in a stipulated adjudication is also consistent with the findings necessary to support termination of parental rights set forth in the dispositional statute and helps to avoid discrepancies between adjudicatory and dispositional rulings, such as those that occurred in the underlying proceedings in this case. A court may, at disposition, terminate parental, guardianship, and custodial rights when the

court finds that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination is in the children's best interests. W. Va. Code § 49-4-604(c)(6). In this vein, we have previously recognized that

> in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quotations and citations omitted).

Furthermore, when a parent stands silent when asked to help identify the abuser, a court can construe such silence as culpability and support the termination of the parent's rights to the child because the parent has failed or refused to acknowledge and remedy the conditions of abuse and neglect at issue in the case. *See, e.g.*, Syl. pt. 2, *W. Va. Dep't of Health & Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996) ("Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability."); Syl. pt. 3, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993) ("Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable

likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.").

Applying these authorities to the facts before us, we find that Mother's and Father's stipulations are deficient because they do not contain the information required to be included in a stipulated adjudication pursuant to Rule 26(a). Mother's stipulation, which is in her appendix record, provided that "Infant Respondent, [Z.S.-1], suffered injuries while in the custody of [Mother] and [Father], and [Mother] does not know how those injuries occurred." However, Rule 26(a) requires a stipulation to contain *both* "(1) [a]greed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition" *and* "(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition." Mother's stipulation acknowledges the child's injuries but does not explain how they are related to her being named as a respondent parent in the case. Mother's stipulation also lacks any information regarding her "problems, conduct, or condition" as the respondent parent or "[a] statement of [her] problems or deficiencies to be addressed at the final disposition." *Id.* Inclusion of all the "[*r*]*equired information*" set forth in Rule 26(a) is not optional. *Id.* Because Mother's stipulation failed to meet the requirements of Rule 26(a), the circuit court erred by adjudicating Mother based on her defective stipulation.

Similarly, Father's stipulation, which appears to be substantially similar to Mother's stipulation, also does not comply with the requirements of Rule 26(a). Although Father's stipulation is not in his appendix record, the circuit court summarized it in its adjudicatory order regarding Father as follows: "the Respondent [Father] . . . stipulated to the fact that injuries occurred to the infant child, [Z.S.-1,] while in her [*sic*] care and does not know how they occurred." Father's stipulation also fails to provide facts as to his role as a respondent parent in the case, including his "problems, conduct, or condition" as well as his "problems or deficiencies to be addressed at the final disposition." W. Va. R. P. Child Abuse & Neglect Proc. 26(a). Thus, the circuit court also erred by adjudicating Father based on his defective stipulation.

Therefore, we find that the circuit court erred in adjudicating Z.S.-1 as a neglected child and Mother and Father as neglectful parents based upon the parents' defective stipulations. The court compounded this error during the dispositional phase of the case when it terminated the parents' parental rights based upon its finding that the parents had failed to "recogni[ze] and acknowledge[e] . . . how this child was injured" and further ruled that their "absolute silence with respect to how the abuse occurred to this child equals culpability." These findings of the parents' shortcomings were inextricably linked to their failure to comply with the Rule's requirements that stipulated adjudications include "[a] statement of respondent's problems or deficiencies to be addressed at the final disposition." W. Va. R. P. Child Abuse & Neglect Proc. 26(a)(2). Because Mother and Father did not, in their stipulated adjudications, include information about their conduct or

deficiencies in causing Z.S.-1's injuries or allowing them to occur but instead stated in their stipulations that they did not know how the child had been injured, the circuit court construed their silence against them at the dispositional hearing. Absent stipulated adjudications that complied with the requirements of Rule 26(a) or a full adjudication on the merits, there was no proper adjudication of Z.S.-1 as an abused and/or neglected child and Mother and Father as abusive and/or neglectful parents, and the circuit court lacked jurisdiction to proceed to a disposition as to Z.S.-1.

Failure to render a proper adjudication deprives the court of jurisdiction to proceed to the dispositional phase of an abuse and neglect proceeding and is a clear violation of the established procedures governing abuse and neglect proceedings. *See A.P.-1*, 241 W. Va. at 693, 827 S.E.2d at 835.

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). Therefore, we find that the circuit court failed to properly adjudicate Mother or Father as to Z.S.-1 during the underlying proceedings and that this failure frustrated the process for conducting abuse and neglect proceedings and deprived the court of jurisdiction to proceed to disposition as to this child. Accordingly, we vacate the circuit court's May 31, 2022 order terminating

17

Mother's and Father's parental rights to Z.S.-1, as well as the court's adjudicatory orders that were based on the parents' improper stipulations, and remand for further proceedings consistent with this opinion.

### B. Child Z.S.-2: Absence of Adjudication

Despite the numerous hearings that were held and orders that were entered in the underlying abuse and neglect proceedings, we cannot locate any definitive adjudication of Z.S.-2 as an abused and/or neglected child or of Mother or Father as abusive and/or neglectful of Z.S.-2. The DHHR properly added Z.S.-2 to Z.S.-1's abuse and neglect case by way of an amended petition upon Z.S.-2's birth, and the record alludes to the child's addition to the case. However, neither Mother's nor Father's appendix record contains any adjudicatory orders pertaining to Z.S.-2. As noted above in relation to Z.S.-1, without a proper adjudication, the circuit court lacked jurisdiction to proceed to disposition as to this child. *See* Syl. pt. 8, *C.S.*, 247 W. Va. 212, 875 S.E.2d 350; Syl. pt. 1, *T.C.*, 172 W. Va. 47, 303 S.E.2d 685. Without a proper adjudication, an abuse and neglect case cannot proceed to a final disposition of the child's abuse and neglect proceeding or establish permanency consistent with the child's best interests. *See* Syl. pt. 1, *T.C.*, 172 W. Va. 47, 303 S.E.2d 685. Therefore, the lack of adjudication as to Z.S.-2 requires the vacation of the circuit court's dispositional order as to Z.S.-2. *See* Syl. pt. 5, *Edward B.*, 210 W. Va. 621, 558 S.E.2d 620. Accordingly, we also reverse the circuit court's May 31, 2022 order

18

terminating Mother's and Father's parental rights to Z.S.-2 and remand this case for further proceedings consistent with this opinion.[18]

**IV.**

**CONCLUSION**

Given the numerous procedural errors attending the underlying abuse and neglect proceedings, we vacate the May 31, 2022 dispositional order of the Circuit Court of Wyoming County terminating the parents' parental rights, as well as the court's adjudicatory orders. We further remand to the circuit court with directions to conduct further proceedings that comply with the procedure for abuse and neglect cases as discussed herein. We direct the Clerk of this Court to issue the mandate contemporaneously with this opinion.

No. 22-602   Vacated and Remanded.

No. 22-0478  Vacated and Remanded.

---

[18] In light of our determination that the circuit court lacked jurisdiction to proceed to disposition as to either child and our vacatur of the circuit court's adjudicatory and dispositional orders, we do not reach the merits of the errors that Mother and Father raise on appeal.